92 P.3d 789 (2004)
122 Wash.App. 53
STATE of Washington, Respondent,
v.
Manuel GONZALEZ-HERNANDEZ, Appellant.
No. 29814-7-II.
Court of Appeals of Washington, Division 2.
June 22, 2004.
*790 Pattie Mhoon, Attorney at Law, Tacoma, WA, for Appellant.
Donna Yumiko Masumoto, Attorney at Law, Tacoma, WA, for Respondent.
ARMSTRONG, J.
Manuel Gonzalez-Hernandez appeals his jury conviction of two counts of first degree rape of a child and one count of first degree child molestation. He raises a number of issues, including that the trial court erred by allowing a detective to testify to a colloquy between an uncertified translator and Gonzalez in which Gonzalez admitted he was sorry. We agree; and because the error was prejudicial, we reverse.

FACTS
In May 2002, Jennifer Stouffer became concerned that someone had improperly touched her six-year-old daughter, A.S. Stouffer asked A.S. if anyone had been touching her; A.S. responded "yes, daddy had." Report of Proceedings (RP) at 105-06. Gonzalez was living with Stouffer at the time and A.S. called him "daddy." When Stouffer questioned Gonzalez about A.S.'s statement, Gonzalez began crying, denied improperly touching A.S., and said he had only given A.S. a bath. A few days later, A.S. came home from school and told Stouffer that Gonzalez had "touched her privates with his tongue." RP at 109.
That same month, Jill Seamans (a guidance counselor at A.S.'s school) showed a video on abuse prevention skills. A.S. told her teacher, Sharee Cumbee, that "my dad has touched me ... under the covers." RP at 160. A.S. also told Seamans that Gonzalez had touched her twice and that she had not told her mom because her dad would be mad at her. A.S. said Gonzalez had told her to keep it secret. A.S. said the touching happened "two years ago," but then said it happened *791 when she was six years old, her current age. RP at 45.
In a separate incident two years earlier, two 11-year-old girls sexually molested A.S. Stouffer caught A.S. "touching a little girl's private with her tongue." RP at 112.
Jennifer Knight, a forensic interviewer with the prosecutor's office, interviewed A.S. During her interview, A.S. stated, "daddy licks me inside here," pointing to her vaginal area. RP at 58. A.S. described her father removing her clothes and underwear, then rubbing lotion on her before licking her private part. A.S. also disclosed that one time she had to take a bath with her dad and that he made her "sit on his private." RP at 64-65.
Michelle Breland, a pediatric nurse, examined A.S. and found no physical abnormalities with A.S.'s genital area.
Unable to get a certified interpreter, Pierce County Sheriff's Officer Berg asked Officer Reynaldo Punzalan to translate during her interview with Gonzalez. Punzalan grew up in central California and had also lived in Central America; he could communicate in Spanish "fairly well." RP at 224. Although Berg studied Spanish for four years and understands more than she speaks, Punzalan speaks Spanish better than Berg. During the interview, Gonzalez spoke some English, but he spoke mostly Spanish. Berg recorded the statements Punzalan interpreted.
Punzalan told Gonzalez that the interview concerned child rape. Gonzalez denied any sexual contact with A.S. Berg's report stated that Gonzalez said he was sorry. But Punzalan could not recall if Gonzalez said he was sorry; he was also not sure he would have recognized the word "sorry" in Spanish. RP at 232. Punzalan testified that if Gonzalez "said he was sorry, it was probably in English." RP at 232. And when asked what the Spanish word for "rape" was, Punzalan stated that he believed he used the English word.
The State charged Gonzalez with two counts of first degree child rape and one count of first degree child molestation.
At trial, Gonzalez testified he had never touched A.S. inappropriately. He said he had given A.S. a bath on one occasion when he bathed her brothers, and that Stouffer was home at the time.
In rebuttal, the State called Punzalan and Berg to testify about Gonzalez's statements. Berg testified to Gonzalez's responses (to Berg) as translated by Punzalan. After the court overruled defense counsel's objection, Berg testified that she asked Gonzalez if "he was sorry." RP at 244. He said that he was. When asked why he was sorry, Gonzalez said he "didn't know." RP at 244. When asked if A.S. was lying, Gonzalez responded that "she was not lying," and "he wasn't lying either." RP at 244.
The jury found Gonzalez guilty on all three counts.

ANALYSIS
Gonzalez argues that Berg's testimony reporting Punzalan's translations was inadmissible hearsay. He points in particular to Berg's testimony that Gonzalez said he was sorry. The State counters that the evidence was not hearsay because it was not offered for the truth of the statements. Rather, Berg's testimony, according to the State, was admissible as either an admission or prior inconsistent statement to impeach Gonzalez's testimony.
We review a trial court's decision to admit evidence for abuse of discretion. State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967 (1999). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997).
Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801. It is not admissible except as provided by the rules of evidence, other court rules, or statute. ER 802. Where a statement is not offered for the truth of the contents of the conversation, but only to show that it was made, the statement is not hearsay. ER 801; State v. Garcia-Trujillo, 89 Wash.App. 203, 209, 948 P.2d 390 (1997).
*792 Where the police use an interpreter in questioning a suspect, the questioning officer's testimony of what the interpreter said is admissible only if it is not offered for the truth of the matters asserted or if the interpreter was an agent of or authorized to speak for the declarant. Garcia-Trujillo, 89 Wash.App. 203, 948 P.2d 390.
In Garcia-Trujillo, a border patrol agent whose native language was Spanish interpreted a detective's questioning of a Spanish-speaking defendant about alleged sexual activity with a minor. Garcia-Trujillo, 89 Wash.App. at 205, 948 P.2d 390. The defendant had testified that the victim told him she was 17 years old; he also denied telling the police that he did not know how old the victim was. Garcia-Trujillo, 89 Wash.App. at 206, 948 P.2d 390. The translating agent testified, out of the jury's presence, that he asked the defendant, "Do you know how old [V.C] is?" and he remembered the answer was, "No." Garcia-Trujillo, 89 Wash.App. at 206, 948 P.2d 390. The agent admitted that, "to him the question `Did you know how old [V.C.] was?' was the same as `Do you know how old [V.C.] is?'" Garcia-Trujillo, 89 Wash.App. at 210, 948 P.2d 390. And "[h]e said he would probably have translated them the same way, even though one was intended to elicit what Garcia knew at the time he had sex with V.C. and the other was intended to elicit what he knew at the time of the interview." Garcia-Trujillo, 89 Wash.App. at 210, 948 P.2d 390.
Concerned about the significant difference between the two possible meanings of the interpreter's question, the court held the testimony inadmissible hearsay even if offered to impeach the defendant's testimony. The court reasoned that the testimony was hearsay because the interrogating detective could testify only to what the interpreter told him the defendant said. Garcia-Trujillo, 89 Wash.App. at 209-10, 948 P.2d 390. Because of this and because the interpreter was neither the defendant's agent nor authorized to speak for him, the hearsay was inadmissible. Garcia-Trujillo, 89 Wash.App. at 210, 948 P.2d 390. And the court found the error harmful because the detective's testimony as to what the defendant said through the agent interpreter was inherently unreliable; the detective had no way of knowing whether the translated question was the same question he had asked. Garcia-Trujillo, 89 Wash.App. at 211-12, 948 P.2d 390.
Garcia-Trujillo is unclear in its underlying rationale. While expressing its reliance on State v. Huynh, 49 Wash.App. 192, 742 P.2d 160 (1987), the Garcia-Trujillo court held that even the impeaching evidence was inadmissible hearsay because the testifying detective knew and repeated only what the interpreter had told him. Yet Huynh stated that such testimony is admissible if not offered for the truth of the matter asserted. Huynh, 49 Wash.App. at 203, 742 P.2d 160 (citing 29 AM.JUR. 2d Evidence § 501, at 558 (1967)). If the questioning detective's testimony as to the defendant's translated answers is hearsay because the officer repeats only what the translator tells him, it is hearsay whether offered for the truth of the statement or to impeach. In either case, the officer testifies only to what the translator tells him the defendant says. Moreover, Garcia-Trujillo mixed its discussion of the hearsay problem with its concern about the flawed translation that rendered the detective's testimony inherently unreliable. Thus, the Garcia-Trujillo court's real concern seemed to center on the unreliable translation.
Regardless of how the hearsay issue is analyzed, we face the same reliability issue. Berg testified that Gonzalez said he was sorry in English. But the State did not establish what question Punzalan asked Gonzalez in Spanish that elicited the answer. And this is particularly troubling because Punzalan did not know the Spanish word for sorry and may not have known the Spanish word for rape. When asked what the Spanish word for rape was, Punzalan said he used the English word for rape, suggesting that he did not know the Spanish word. Yet the relevant question was whether Gonzalez said he was sorry for the rape. The record simply does not establish what Gonzalez was sorry for. Without this, we do not know whether Gonzalez's answer contradicted his testimony or was otherwise relevant. Adding to our concerns about this testimony is *793 Berg's testimony that when asked why he was sorry, Gonzalez said "[h]e didn't know why he was sorry," and Punzalan's testimony that Gonzalez said A.S. was not lying but neither was he. RP at 243-44. Accordingly, Berg's testimony that Gonzalez said he was sorry was inadmissible.
Moreover, we cannot say the error was harmless. The error is harmless only if we find it reasonably probable that the evidence did not affect the result of the case. State v. Jackson, 102 Wash.2d 689, 695, 689 P.2d 76 (1984) (citing State v. Robtoy, 98 Wash.2d 30, 653 P.2d 284 (1982)). Although the State presented a number of witnesses to whom A.S. had reported the incidents, the persuasive value of this testimony turns on A.S.'s credibility. Gonzalez consistently denied raping A.S.; he also presented evidence that A.S. had participated in similar acts with other children in the past, thereby explaining her sophistication. And the State lacked any physical corroboration of the rapes. Because the State's case depended on the jury believing A.S., not Gonzalez, we find it reasonably probable that his statement that he was sorry affected the guilty verdict.
Gonzalez raises a number of other issues. Because as they are unlikely to arise on retrial, we do not address them.
Reversed and remanded.
We concur: QUINN-BRINTNALL, C.J., and SEINFELD, J. Pro Tem.