[No. 36941-9-II.   Division Two.   January 5, 2010.]

The State of Washington, *Respondent*, v. Jose Matilde Morales, *Appellant*.

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for appellant.

*L. Michael Golden, Prosecuting Attorney,* and *Lori E. Smith, Deputy,* for respondent.

¶1 HUNT, J. — Jose Matilde Morales appeals his jury convictions for vehicular assault and driving under the influence. He argues that (1) the trial court erroneously admitted his blood alcohol test results because the State failed to show that he was advised of his statutory right to an independent blood test under RCW 46.20.308(2);[1] (2) the trial court erroneously admitted beer containers found

---

[1] Although the legislature has amended this statute several times since the date of Morales's offense, the relevant language has not changed. *Compare* former

during an allegedly illegal search of his vehicle; and (3) the evidence was insufficient to establish that he operated his motor vehicle under the influence of intoxicants and that he operated his vehicle in a reckless manner. We affirm.

## FACTS

### I. Hit and Run

¶2 On November 3, 2004, Marilyn Robertson drove her elderly mother north on Highway 507 toward Bucoda, Washington. As she drove around a curve at approximately 35 to 40 MPH, Robertson observed Morales's vehicle approaching a stop sign where a side road intersected with Highway 507. Although it was daylight and the intersection was in an open and visible area, Morales made no attempt to stop. Instead, he drove through the stop sign into Robertson's lane of travel, apparently at about 15 MPH.[2]

¶3 Robertson, whose right-of-way lane of travel had no stop sign at that intersection, swerved to avoid Morales, but she could not prevent his colliding with her car. The collision's impact spun Robertson's car around, forced it into a ditch, and severed Morales's front bumper from his vehicle. Morales stopped momentarily and then drove away; he did not return to the accident scene. As a result of the collision, Robertson suffered injuries to her knees, shoulders, neck, and forehead. Her mother suffered a fractured ankle and a twisted foot.

### A. Arrest for Driving under the Influence

¶4 Shortly after the accident, retired police officer William Oberg and his brother were driving south on Highway 507 when they passed a heavily damaged vehicle driving in

---

RCW 46.20.308(2), (3) (2004), *with* RCW 46.20.308(2), (3). Accordingly, we cite the current version of the statute.

[2] Morales's trial counsel noted this approximate speed during closing argument.

the opposite direction; its hood was sticking up and steam was coming from its engine. As they continued driving, they came upon Robertson's vehicle in the ditch. On learning about the hit and run collision, Oberg turned around and drove back with his brother to look for the damaged vehicle that they had passed earlier. Oberg found the damaged car on the side of the road approximately one mile from the accident scene.

¶5  Oberg observed Morales exit the vehicle and detained him while his (Oberg's) brother called for assistance. When Oberg told Morales, in English, that he should have stayed at the accident scene, Morales stated, in English, "I don't care about the people in the accident." 2 Verbatim Report of Proceedings (VRP) at 158. Morales also threatened both Oberg brothers.

¶6  Washington State Trooper Todd Thornburg arrived, conversed with Morales in English, and experienced no language barrier. Morales appeared to understand the trooper's questions, gave no indication that he did not understand, and provided intelligible answers in English. Morales told the trooper that he had been headed to Tenino when someone pulled out in front of him, that he (Morales) was the driver and the only occupant of his vehicle, and that he had consumed one beer before driving.

¶7  During his contact with Morales, Thornburg observed that Morales emitted an "obvious odor of intoxicants" and that his eyes were watery and bloodshot. 2 VRP at 174. Thornburg arrested Morales for driving under the influence of alcohol and for hit and run and read him his *Miranda*[3] rights in English. Morales responded verbally, in English, that he understood his rights. Before an ambulance took Morales to the hospital, Thornburg searched Morales incident to his arrest and found an identification card and two keys.

¶8  Washington State Trooper Terry Brunstad also spoke with Morales at the site where Oberg had detained him.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Brunstad similarly noticed that Morales's eyes were blood-shot and watery, that Morales's pupils were constricted, and that Morales smelled of alcohol.

## B. Search of Vehicle

¶9 After Morales left in the ambulance, Thornburg searched Morales's vehicle. From outside the car, Thornburg saw two beer cans on the right front seat, but he could not tell whether they were open. Once inside the vehicle, he smelled intoxicants, and found a total of five beer containers—the two beer cans on the front passenger seat, one full and one empty; and two full beer bottles and one empty beer can behind the driver's seat.

¶10 Thornburg inserted into the ignition one of the keys that he had found on Morales. The key fit and unlocked the ignition, but the damage sustained during the collision prevented the engine from starting. Thornburg then impounded Morales's vehicle and inventoried the items found inside, as is common practice for troopers in this situation. The police later matched Morales's rear license plate with the license plate on the front bumper left behind at the accident scene.

## C. Blood Draw at Hospital

¶11 Meanwhile, Washington State Trooper Robert Huss remained at the collision scene. Emergency personnel told him that Robertson's mother had suffered a fractured right ankle. Huss used his radio to inform Thornburg about the fracture. Thornburg informed Brunstad that they would be processing Morales for vehicular assault. Brunstad then followed Morales to the hospital to conduct a mandatory blood draw under RCW 46.20.308(3).

¶12 When Brunstad arrived at the hospital, he contacted a Spanish/English interpreter who worked in the emer-

gency room to provide Spanish translation for Morales.[4] Brunstad gave the Spanish interpreter forms from which to read Morales his *Miranda* rights and the special statutory notice[5] informing the arrestee of his right to an independent blood alcohol test.[6] Morales asked no clarifying questions during or after hearing the interpreter read to him from the forms in Spanish; nor did he appear unable to understand what he heard. On the contrary, Morales signed Brunstad's forms, indicating that he understood his constitutional rights and the special statutory notice of his right to an independent blood test.

¶13 Brunstad then asked Morales approximately 30 driving under the influence (DUI) interview questions: Brunstad read the questions in English and the interpreter restated them in Spanish. Morales's translated responses were appropriate to the questions asked, suggesting that the translator was accurately translating the questions and Morales's responses.

## II. Procedure

¶14 The State charged Morales with hit and run with an injury,[7] vehicular assault,[8] DUI,[9] and first degree driving while license suspended (DWLS).[10] The State later dismissed the fourth count, DWLS.

### A. CrR 3.5 Hearing

¶15 Morales moved to exclude the statement he had made during his hospital interview with Brunstad, arguing

---

[4] The record does not show what precipitated the contact with an interpreter.

[5] RCW 46.20.308(2).

[6] Brunstad did not personally read the special notice to Morales in English. Instead, he relied on the interpreter to read it to Morales in Spanish.

[7] RCW 46.52.020(3).

[8] RCW 46.61.522(1)(a)-(c).

[9] RCW 46.61.502(1)(a), (b).

[10] RCW 46.20.342(1)(a).

that he had not been properly advised of his constitutional *Miranda* rights before he made these statements. Brunstad, who did not speak Spanish, could not verify exactly what the interpreter had read to Morales in Spanish. The State neither identified the hospital interpreter nor called him to testify. Accordingly, the trial court ruled that the State had failed to prove beyond a reasonable doubt that Morales had understood and knowingly and voluntarily waived his constitutional *Miranda* rights. And the trial court excluded Morales's answers to the 30 DUI interview questions that Brunstad had asked through the interpreter.[11]

## B. CrR 3.6 Hearing

¶16 During an evidentiary hearing[12] on the first morning of trial, Morales's counsel moved under CrR 3.6 to suppress the evidence found in Morales's vehicle. He argued that the trooper's search did not fall within the "search incident to arrest" exception to the warrant requirement because Morales was at the hospital during the vehicle's search and no longer present at the scene. The trial court agreed. Nevertheless, the trial court ruled the beer cans and bottles admissible under a different exception to the warrant requirement—the doctrine of inevitable discovery—based on Thornburg's impounding and inventorying Morales's disabled vehicle left on the roadside.

## C. Statutory Notice of Right to Independent Blood Test

¶17 At trial, Morales asked the trial court to exclude his blood alcohol test results and the testimony about the

---

[11] The State does not cross-appeal the trial court's exclusion of Morales's DUI interview questions and answers. Thus, the adequacy of Morales's *Miranda* warnings in Spanish is not before us and, therefore, we do not address it.

[12] Rather than issue written findings of fact and conclusions of law, as CrR 3.6(b) requires, the trial court made detailed oral findings of fact and conclusions of law. Although failure to enter written CrR 3.6 findings and conclusions is error, such error is harmless as long as the trial court's oral findings are sufficient to permit appellate review. *State v. Riley*, 69 Wn. App. 349, 352-53, 848 P.2d 1288 (1993). Both parties assert that the trial court's oral rulings are sufficient for appellate review, and we agree.

special statutory notice, based on the court's earlier exclusion of the DUI interview questions. Morales argued that the blood draw was improper because the State could not show he had received the special statutory notice about his right to independent blood alcohol testing. But Brunstad testified that he had instructed the interpreter to read Morales the special notice form in Spanish and that the interpreter apparently did so. Morales presented no testimony and made no offer of proof that he had not received the special notice or that he did not understand the notice the interpreter read to him.

¶18 Engaging in a statutory analysis of RCW 46.20.308, however, the trial court concluded that (1) when a suspect is arrested for vehicular assault or vehicular homicide based on an accident involving serious bodily injury to another, a mandatory blood test is administered, even without the arrestee's consent; and (2) therefore, no special notice about the right to an independent blood test is required.[13] The trial court denied Morales's motion and admitted evidence that his blood draw revealed 0.12 grams of alcohol per 100 milliliters of blood.

## D. Verdict and Sentence

¶19 Morales conceded guilt on the hit and run count. The jury found him guilty of all three charges and returned a special verdict for the vehicular assault, finding that Morales had operated a motor vehicle while under the influence of intoxicating liquor, had operated a motor vehicle in a reckless manner, and had operated a motor vehicle with disregard for the safety of others.

¶20 Morales appeals.

---

[13] Based on this reasoning, the trial court did not address whether Morales had received his special statutory notice about his right to an independent blood alcohol test.

## ANALYSIS

### I. Special Statutory Notice of Right to Independent Blood Test

¶21 Morales argues that the trial court erred by admitting his blood alcohol test results because (1) the trial court incorrectly ruled that, in light of the compulsory blood draw for vehicular assault, the special statutory notice was not required; and (2) the State failed to prove that he was properly advised of his statutory right to an independent blood alcohol test because it did not present evidence establishing exactly what the interpreter had read to him.

¶22 We agree with Morales's first argument—that the trial court was incorrect in ruling the special statutory notice was not required. But this error is not dispositive. The record shows that the trooper handed the special statutory notice form to the interpreter, who then read from the form in Spanish to Morales. Conversely, nothing in the record suggests that the interpreter failed to translate the special statutory notice form accurately or that Morales did not understand what the interpreter read to him. This uncontroverted evidence is sufficient to establish that Morales received his special statutory notice; therefore, Morales's second argument fails.

### A. Standards of Review

¶23 We review a trial court's evidentiary rulings for abuse of discretion. *State v. Stubsjoen*, 48 Wn. App. 139, 147, 738 P.2d 306, *review denied*, 108 Wn.2d 1033 (1987). A trial court abuses its discretion when it exercises it on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We leave credibility determinations to the trier of fact; such determinations are not subject to appellate review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We

review questions of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

B. Statutory Notice of Right to Independent Blood Test

■ ¶24 Our legislature has provided that a person arrested for vehicular assault or vehicular homicide may be subjected to a blood test without his consent. RCW 46.20.308(3).[14] The arresting officer, however, must also inform the arrestee of his right to have additional blood tests administered by any qualified person of his choosing. RCW 46.20.308(2).[15] The State's authority to compel a blood test under RCW 46.20.308(3) does not negate the independent requirement to inform the arrestee of his right to additional, independent testing. *State v. Turpin*, 94 Wn.2d 820, 823, 620 P.2d 990 (1980). Therefore, the trial court erred in ruling that the statutory notice of the right to independent testing was not required in light of the mandatory nature of the blood draw for Morales's vehicular assault.

■ ■ ¶25 Generally, the results of a mandatory blood test are not admissible at trial if the defendant was not advised of his statutory right to an independent blood test. *Turpin*, 94 Wn.2d at 826-27. But here, although the trial court's ruling that the statutory warning was not required

---

[14] RCW 46.20.308(3) provides in relevant part:

Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.

[15] In addition to describing how blood alcohol tests are to be performed and the consequences of a driver's refusal to take a nonmandatory test, RCW 46.20.308(2) provides:

The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506.

is contrary to *Turpin*, this error was not prejudicial because the blood alcohol tests were admissible on other grounds supported by the record. *See State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004). Here, the uncontroverted record shows that, at Brunstad's behest, the interpreter read the special statutory notice to Morales in compliance with RCW 46.20.308(2). Based on this alternate ground, we affirm the trial court's admission of the blood test results.

## C. Proof of Advisement

### 1. Burden and standard of proof

¶26 The special notice informs a defendant of his statutory right to additional testing of his blood sample for possible use as evidence in his own defense. RCW 46.20.308(2). Before the trial court can admit the mandatory blood test as evidence, the State must show that the defendant was given notice of his statutory right to an additional, independent test. *Turpin*, 94 Wn.2d at 823. The remaining question is: What is the standard of proof?

¶27 Washington courts have held that analogous provisions of the implied consent statute impose a "preponderance of the evidence" standard of proof. For example, RCW 46.20.308(1) allows the arresting officer to administer a breath or blood test where the officer reasonably believes that the defendant drove under the influence of an intoxicating substance; the State must establish such belief by a preponderance of the evidence. *O'Neill v. Dep't of Licensing*, 62 Wn. App. 112, 116, 813 P.2d 166 (1991). Similarly, before the State can revoke a defendant's driver's license under RCW 46.20.308(2)(a) for refusing to submit to a breathalyzer test, the State must prove such refusal by a preponderance of the evidence; failure to meet this burden renders such refusal inadmissible. *Rockwell v. Dep't of Licensing*, 94 Wn. App. 531, 535, 972 P.2d 1276, *review denied*, 138 Wn.2d 1022 (1999).

¶28 Here, the State proved by a preponderance of the evidence that Morales received notice of his right to inde-

pendent blood alcohol testing. Brunstad's uncontroverted testimony established that the interpreter read the special evidence notice to Morales from the form that Brunstad provided to him. The record reflects no problems with the reading of this form and no suggestion that Morales did not understand it. On the contrary, Morales signed the special evidence notice form, indicating that he understood his right to an independent blood test.[16]

## 2. Not analogous to *Miranda* warnings

¶29 At oral argument, Morales attempted to analogize a failure to give the statutory special evidence warning to a failure to inform a suspect of his constitutional *Miranda* right to remain silent.[17] This analogy does not follow because the constitutional right to remain silent is qualitatively different from the statutory right to an independent blood test. Furthermore, unlike the constitutional right to refuse to answer incriminating questions, a defendant's silence or objection to the legislatively mandated blood test is inconsequential when his arrest for vehicular homicide or vehicular assault rescinds his right to refuse a blood draw. RCW 46.20.308(5).

¶30 In *Carranza*, for example, Division Three of our court held that (1) a suspect has no *constitutional* right to notice of his statutory entitlement to independent testing of his blood sample, and (2) failure to give a suspect this special notice "does not rise to the level of a constitutional denial of due process." *State v. Carranza*, 24 Wn. App. 311, 315-16, 600 P.2d 701 (1979). As our Supreme Court has acknowledged, this special notice is a statutory right that ensures a suspect's awareness of his right to additional independent testing. *Turpin*, 94 Wn.2d at 824. This statutory right, however, does not impose as demanding a burden of proof on the State as do the constitutional *Miranda* warnings.

---

[16] The record on appeal does not include a copy of this form.

[17] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

¶31 Unlike notice of the statutory right to an independent blood test, *Miranda* protects a suspect from making any incriminating statements to police while in custody. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). The State must meet a high standard of proof to establish waiver of a defendant's constitutional right to remain silent. *Miranda*, 384 U.S. at 475. Benefitting the defendant, the court entertains every reasonable presumption against waiver of constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). And the State has the "heavy burden" to prove that a defendant knowingly, intelligently, and voluntarily waived his constitutional right to remain silent. *Miranda*, 384 U.S. at 475. Silence does not constitute waiver for *Miranda* purposes; nor does the defendant's failure to assert his right to remain silent.[18] *Miranda*, 384 U.S. at 475.

¶32 A vehicular assault arrestee's statutory right to the special evidence notice, however, does not involve a constitutional right and, therefore, the State is not held to the same high standard of proof. The United States Supreme Court, for example, has held that (1) taking a blood sample and admitting its analysis does not violate a defendant's Fifth Amendment privilege against self-incrimination; (2) blood alcohol content analysis is not "testimonial or communicative" in nature but, rather, constitutes "real or physical evidence"; and (3) the taking of a blood sample is analogous to fingerprinting, photographing, or taking measurements of a suspect, where the suspect/donor's participation is irrelevant to analysis. *Schmerber v. California*, 384 U.S. 757, 761, 764, 765, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Although the trial court here did not address this

---

[18] In excluding Brunstad's DUI questioning and answers, the trial court reasoned that, because the State offered no evidence about exactly what the interpreter read to Morales in explaining his constitutional right to remain silent, the State failed to meet its burden to show beyond a reasonable doubt that Morales understood and intelligently waived his *Miranda* rights. As we previously noted, however, the State does not cross-appeal this trial court ruling; therefore, its propriety is not before us.

less-stringent standard of proof for establishing that Morales had been advised of his statutory right to independent testing, it correctly avoided applying the higher *Miranda* burden.

## 3. No prejudice

¶33 Even when an arresting officer uses erroneous language in administering the special evidence warning, exclusion of the subsequently obtained blood-alcohol-test evidence is not required where the defendant suffered no actual prejudice. *Graham v. Dep't of Licensing*, 56 Wn. App. 677, 680, 784 P.2d 1295 (1990).[19] Thus, here, even assuming (without accepting) that the interpreter used erroneous language in reading the special statutory notice to Morales, there is no showing of prejudice. Unlike Graham,[20] Morales asserted no prejudice at trial; nor does he allege prejudice on appeal. And we perceive none, especially where, unlike involuntary or coerced confessions and hearsay,[21] a blood alcohol test maintains its probative value despite any variance in administering the special statutory notice. *Schmerber*, 384 U.S. 757.

---

[19] Analogous to Morales's request to exclude his blood alcohol test results, Graham sought exclusion of her refusal to submit to the breathalyzer test from the hearing to revoke her driver's license.

[20] Graham argued that an error in the special warning about her right to an independent blood test prejudiced her: She contended that (1) the erroneous inclusion of the words "at your own expense," in reference to her right to an independent blood alcohol content test, "created a 'chilling effect' on her decision whether to take the breath test"; and (2) therefore, the fact that she had refused to submit to any blood or breath test should have been excluded from the hearing at which the Department of Licensing revoked her driver's license based on such refusal. *Graham*, 56 Wn. App. at 680.

[21] Part of the reason for generally excluding hearsay statements is their diminished truth-seeking value resulting from inconsistencies in human perception and memory, which cannot be tested on cross-examination when the declarant is not present in court. *Crawford v. Washington*, 541 U.S. 36, 43, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

## D. *Turpin*

¶34 Morales further contends that the trial court's admission of his blood test results conflicts with the Supreme Court's ruling in *Turpin*. We disagree.

¶35 Turpin, like Morales, was at fault in an automobile accident and suspected of driving while intoxicated. *Turpin*, 94 Wn.2d at 821. But Turpin, unlike Morales, did not immediately receive notice of her arrest, the compulsory taking of her blood sample after the officers took her to the hospital, or her right to independent testing.[22] *Turpin*, 94 Wn.2d at 822.

¶36 Turpin's arrest for negligent homicide negated her right to refuse a statutorily-required blood test. *Turpin*, 94 Wn.2d at 822. Nevertheless, the record's total silence about any attempt to give Turpin notice of her right to independent blood testing led the Supreme Court to hold that the trial court erred in failing to exclude her compulsory blood test results.[23] *Turpin*, 94 Wn.2d at 826-27. Noting that the gravity of the negligent homicide charge increased, rather than precluded, the need to protect Turpin's statutory right to independent blood alcohol testing, the court held that giving notice of the right to independent testing is mandatory and that failure to give this notice requires exclusion of the State's blood test results. *Turpin*, 94 Wn.2d at 826.

¶37 Here, in contrast, there was no similar failure to give Morales notice of his right to independent testing; therefore, the *Turpin* exclusionary rule does not apply. Unlike the silent record in *Turpin*, the record here contains

[22] During Turpin's treatment for a broken jaw, the officer had informed hospital staff of her arrest and had instructed a nurse to draw a blood sample. *Turpin*, 94 Wn.2d at 822. Not until three days after the incident did officers inform Turpin that soon after the accident, they had taken a blood sample from her at the hospital's emergency room. *Turpin*, 94 Wn.2d at 822. The arresting officer attributed this oversight to his uncertainty about Turpin's physical and emotional condition at the time, even though Turpin had been alert, responsive, and able to understand verbal communications. *Turpin*, 94 Wn.2d at 821.

[23] RCW 46.20.308(3).

uncontroverted evidence confirming the reading of the special statutory notice to Morales, including notice of his right to independent testing, at the time of the compulsory blood draw. Brunstad testified that (1) he sought assistance from a Spanish/English interpreter employed at the hospital emergency room; (2) he instructed the interpreter to read from forms setting forth both the *Miranda* rights and the special statutory notice, which Brunstad handed to the interpreter; (3) Morales listened while the interpreter read these forms to him in Spanish; and (4) when the interpreter finished reading the forms, Morales signed his name on the forms to show that he understood his constitutional rights and the statutory notice that had been read to him.

¶38 Again, nothing in the record controverts Brunstad's testimony that the interpreter read Morales the special statutory notice form that he (Brunstad) had provided and that Morales acknowledged, or that this notice included notice of his right to independent testing.[24] Thus, unlike Turpin, the record here shows by a preponderance of the evidence that Morales received the statutory special evidence notice and knew of his right to independent additional testing of his blood sample. Accordingly, *Turpin* does not control.

### E. Harmless Error

¶39 Even if the trial court erred in admitting the mandatory blood tests, this error is harmless because there is sufficient independent evidence that Morales was driving while under the influence of or while affected by alcohol when he ran through the stop sign, crashed into the victim's vehicle, and drove away from the scene in his damaged

---

[24] Morales never asserted below and does not assert on appeal that he was not, in fact, read the special evidence notice or that he did not understand it. Furthermore, it appears that even if Morales had any questions, he had sufficient command of English to ask such questions to Brunstad directly. The record shows that Morales had previously competently conversed with the state troopers in English, answered questions appropriately, given no indication that he did not understand the rights read to him, and asked no questions seeking clarification of any of those rights.

vehicle. Not only did Morales's act of driving through a stop sign into an approaching car strongly suggest some degree of impairment, but also (1) Thornburg and Brunstad testified that Morales smelled of alcohol and that Morales's eyes were bloodshot when they contacted him soon after the accident; (2) Brunstad also noticed that Morales's pupils were constricted, which Brunstad testified could indicate someone was under the influence of certain types of drugs; (3) officers located two open beers in Morales's vehicle; and (4) Morales's vehicle smelled of alcohol. These facts alone would have allowed any reasonable jury to conclude that Morales had been driving under the influence of alcohol.

## II. Vehicle Search

¶40 Morales next argues that the trial court erred in admitting beer cans and beer bottles that Thornburg seized during his warrantless search of Morales's vehicle. Morales contends that admitting such evidence violates article I, section 7 of the Washington State Constitution.[25] We affirm the trial court's admission of this evidence, based on the impoundment and subsequent inventory search of Morales's vehicle.

## A. Standard of Review

¶41 When reviewing denial of a CrR 3.6 motion to suppress, we look for substantial evidence in the record to support the trial court's findings of fact. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999); *State v. Hill*, 123 Wn.2d 641, 644, 647, 870 P.2d 313 (1994). We review the trial court's conclusions of law de novo. *Mendez*, 137 Wn.2d at 214; *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

---

[25] Article I, section 7 of the Washington State Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

## B. Exceptions to Warrant Requirement

¶42 Warrantless searches are per se unreasonable unless they fall within narrowly drawn exceptions.[26] *State v. Johnson*, 104 Wn. App. 409, 414, 16 P.3d 680, *review denied*, 143 Wn.2d 1024 (2001). "[T]he State bears the burden of showing a warrantless search falls within one of these exceptions." *State v. Kull*, 155 Wn.2d 80, 85, 118 P.3d 307 (2005). "Exceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, *inventory searches*, plain view, and *Terry*[27] investigative stops." *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (emphasis added).

¶43 At an impromptu CrR 3.6 hearing, the trial court considered what it regarded as three searches of Morales's vehicle: (1) Thornburg's determination that Morales's key fit the ignition; (2) Thornburg's observation of two beer cans on the right front passenger seat, before he searched the vehicle; and (3) Thornburg's discovery of the other beer cans inside the vehicle after he entered the vehicle. The trial court ruled that the vehicle search did not fall under the search "incident to a valid arrest" exception because Morales had been completely removed from the scene and taken to the hospital before the search took place.[28] Therefore, the trial court considered other possible exceptions to the warrant requirement.

### 1. Open view

¶44 The trial court first ruled that the two beer cans on the front right seat were admissible under the open view

---

[26] "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999).

[27] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[28] The State does not cross-appeal this ruling.

exception.[29] Morales conceded that he could not win his argument that these two beer cans were inadmissible.

¶45 On appeal, Morales focuses his suppression argument on the inevitable discovery rule and the inventory search of his vehicle. He does not challenge admission of these two beer cans under the open view exception or argue that this exception should not apply. Despite asserting that the photo of those two beer cans should not have been admitted, he acknowledges in his sufficiency argument that the officer saw these two beer cans from a lawful vantage point. Accordingly, we do not further address this open view issue.

### 2. Inevitable discovery, impound, and inventory search

¶46 The trial court next addressed the search inside the vehicle, where Thornburg found several other beer cans and discovered that Morales's keys fit the damaged ignition but would not start the vehicle.[30] The trial court admitted this evidence, reasoning that Thornburg would have inevitably discovered these items when he later impounded and inventoried Morales's vehicle.[31]

¶47 Under the inevitable discovery doctrine, the State must prove by a preponderance of the evidence that "the police did not act unreasonably or in an attempt to accelerate discovery, and [that] the evidence would have been inevitably discovered under proper and predictable investigatory procedures." *State v. Avila-Avina*, 99 Wn. App. 9, 17, 991 P.2d 720 (2000); *see also State v. Reyes*, 98

---

[29] Although the trial court did not articulate the words "open view," it did find that the beer cans could be seen from outside the vehicle looking in. And the trial court ruled them admissible.

[30] Morales argues that the entire search of the vehicle was illegal because it did not constitute a search incident to his arrest after he was transported to the hospital. But he does not argue on appeal that the trial court erred in applying the inevitable discovery doctrine to the finding that the key (found on his person) fit the ignition of the car.

[31] Thornburg testified that troopers conduct inventory searches as a matter of routine when they impound vehicles and that he had impounded Morales's vehicle and inventoried the items he found inside.

Wn. App. 923, 927-28, 993 P.2d 921 (2000). "[T]he rule allows neither speculation as to whether the evidence would have been discovered, nor speculation as to how it would have been discovered." *State v. Richman*, 85 Wn. App. 568, 577, 933 P.2d 1088, *review denied*, 133 Wn.2d 1028 (1997).

¶48 While this case was pending before us, our Supreme Court issued *State v. Winterstein*, 167 Wn.2d 620, 220 P.3d 1226 (2009), which arguably holds that the inevitable discovery doctrine does not apply under article I, section 7 of the Washington State Constitution. Even assuming that this was the holding in *Winterstein*, and not dicta,[32] *Winterstein* is not dispositive because the evidence here establishes that there was a lawful inventory search that was not in response to the discovery of the beer cans in the back of the car, and we may affirm on any grounds supported by the record. *Costich*, 152 Wn.2d at 477 (citing *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003)).

¶49 An exception to the exclusionary rule allows law enforcement to conduct a warrantless inventory search following lawful impoundment of a vehicle. *State v. Greenway*, 15 Wn. App. 216, 218, 547 P.2d 1231, *review denied*, 87 Wn.2d 1009 (1976). Evidence discovered during an inventory search is admissible when "there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime." *State v. Montague*, 73 Wn.2d 381, 385, 438 P.2d 571 (1968). RCW 46.55.113(1) authorizes law enforcement to impound a vehicle following the driver's arrest for DUI.

¶50 Here, the facts show not only that the troopers would have inevitably discovered the beer cans in the back of the car during an inventory search following the statutorily authorized impoundment of Morales's vehicle, but also that there was an actual lawful inven-

---

[32] *See Winterstein*, 167 Wn.2d at 638 (J.M. Johnson, J., concurring).

tory search and impoundment that was independent of the trooper's discovery of the beer in the back of the car. Thornburg lawfully impounded Morales's vehicle because (1) he had arrested Morales for DUI, RCW 46.55.113(1) ("Whenever the driver of a vehicle is arrested for violation of RCW 46.61.502 [DUI] . . . , the vehicle is subject to summary impoundment, pursuant to the terms and conditions of an applicable local ordinance or state agency rule at the direction of a law enforcement officer."); and (2) he had probable cause to believe that the vehicle had been used in the commission of a felony, vehicular assault, and was, therefore, evidence. *State v. Clark*, 143 Wn.2d 731, 755, 24 P.3d 1006 (2001) (officer may impound vehicle if he has probable cause to believe it was used in the commission of a felony). Thornburg also testified that it was normal police procedure to conduct an inventory search of an impounded vehicle and that such an inventory search took place here. We therefore affirm the trial court's admission of the beer cans on the back floorboard of Morales's vehicle following the lawful inventory search.[33]

### III. SUFFICIENCY OF EVIDENCE

¶51 Morales next argues that, assuming we rule his blood alcohol test results inadmissible, the remaining evidence is insufficient to support (1) the jury's verdict that he operated a motor vehicle under the influence of alcohol, thus requiring us to reverse his driving under the influence conviction and the special verdict finding that he operated a motor vehicle under the influence of intoxicating liquor; and (2) the jury's special verdict finding that he caused bodily injury to another by driving in a reckless manner. Having held that the trial court did not err when it admitted Morales's blood alcohol test results and the beer

---

[33] Morales does not challenge the validity of his arrest. Nor does he argue that the troopers should not have impounded his vehicle or challenge the actual inventory that Thornburg performed after impounding the vehicle. Instead, he faults the trial court's admission of the additional beer cans under the inevitable discovery doctrine.

can evidence, we review this sufficiency argument based on the entire record. And Morales's challenge fails.

## A. Standard of Review

¶52 When a defendant challenges the sufficiency of the evidence, we view the evidence in a light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). We draw all reasonable inferences in the State's favor. *State v. Sanchez*, 60 Wn. App. 687, 693, 806 P.2d 782 (1991). We consider circumstantial evidence to be as equally reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Again, credibility determinations are for the trier of fact and are not subject to our review. *Camarillo*, 115 Wn.2d at 71.

## B. Driving under the Influence

¶53 The trial court's "to convict" instruction for driving under the influence required the jury to determine whether (1) on November 3, 2004, Morales drove a motor vehicle; (2) Morales was *under the influence of or affected by intoxicating liquor* while driving; and (3) the act occurred in Washington. Morales challenges only the second element, driving under the influence. His blood alcohol level of 0.12 grams of alcohol per 100 milliliters of blood, which was well above the 0.08 statutory presumptive level, is uncontroverted evidence that he was affected by or under the influence of intoxicating liquor.

¶54 His blood alcohol level, however, was not the only evidence of his intoxication. In light of Morales's challenge to the admissibility of his blood test results and his challenge to the jury's special verdict finding that he caused bodily injury to another by driving in a reckless manner, we

note the following additional proof of his having operated a motor vehicle under the influence of alcohol.

¶55 Thornburg and Brunstad testified that they smelled alcohol on Morales and that his eyes were blood-shot when they contacted him shortly after the accident; Morales told Thornburg that he had consumed one beer; but two beer cans (one full and one empty) were visible on the front passenger seat of Morales's vehicle. And Thornburg could smell an "obvious odor of intoxicants" inside the vehicle. 2 VRP at 174. Thornburg's inventory search of Morales's vehicle, which was the instrumentality of the vehicular assault, then revealed a Budweiser beer box behind the driver's seat and some additional beer containers; some of them were also empty.

¶56 In addition, Brunstad noticed that Morales's pupils were constricted, which Brunstad testified could indicate that someone was under the influence of certain types of drugs. As further evidence that Morales was affected by alcohol, he had driven through a stop sign at an open and unobstructed intersection, collided with a vehicle that had the right of way, and drove away from the scene in his damaged vehicle, leaving his injured victims and his bumper behind.

¶57 We hold that sufficient evidence supports the jury's verdict that Morales operated a motor vehicle while under the influence of or affected by intoxicating liquor, both with and without the blood alcohol test results.

### C. Operating a Motor Vehicle in a Reckless Manner

¶58 Jury instruction 15 stated that "[t]o operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences." Clerk's Papers at 41. The record shows that while under the influence of intoxicating alcohol, Morales failed to stop at a stop sign and drove about 15 MPH into oncoming traffic, causing a collision with another vehicle. Thereafter, witnesses saw him drive away from the accident scene in

his damaged vehicle. When Oberg later informed Morales that he should have stayed at the scene, Morales responded that he did not "care about the people in the accident." 2 VRP at 158.

¶59 These facts show that Morales drove his vehicle " 'in a rash or heedless manner, indifferent to the consequences.' " *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005) (quoting *State v. Bowman*, 57 Wn.2d 266, 271, 356 P.2d 999 (1960)). We hold, therefore, that the evidence is sufficient to support the jury's special verdict finding that Morales operated his vehicle in a reckless manner.

¶60 Affirmed.

QUINN-BRINTNALL, J., concurs.

¶61 BRIDGEWATER, J. (concurring in part, dissenting in part) — Jose Matilde Morales appeals his vehicular assault and driving under the influence convictions. I would hold that Morales's vehicular assault conviction, on the basis of either driving under the influence of intoxicating liquor or driving in a reckless manner, cannot stand. Specifically, the State failed to prove that it advised Morales in Spanish of the special evidentiary warnings required by RCW 46.20.308(2); thus the trial court should not have admitted the results of his involuntary blood test. But I would affirm Morales's vehicular assault conviction under the unchallenged prong of operating a vehicle with disregard for the safety of others. In addition, I would remand Morales's vehicular assault charge for resentencing. *See State v. Brown*, 145 Wn. App. 62, 78-79, 184 P.3d 1284 (2008) (different prongs of vehicular assault carry different seriousness levels for sentencing), *review denied*, 165 Wn.2d 1014 (2009). Because the trial court's admission of Morales's blood alcohol test was not harmless error, his conviction for driving under the influence (DUI) also cannot stand. I respectfully concur and dissent.

## ANALYSIS

### I. Special Evidence Warning

¶62 Morales contends that the trial court erred when it admitted the results of his blood alcohol test because the State failed to prove that he received his special evidence warning informing him of his right to additional testing. I dissent from the majority because the State had the burden to prove that it read Morales the special evidence warning and did not meet that burden, even using the lower preponderance of the evidence standard. This court reviews a trial court's evidentiary rulings for abuse of discretion. *State v. Stubsjoen*, 48 Wn. App. 139, 147, 738 P.2d 306, *review denied*, 108 Wn.2d 1033 (1987).

¶63 When the State attempted to introduce Morales's blood alcohol test result, Morales objected because the State had failed to read him the special evidence warning for mandatory blood draws. Morales argued that although the record showed that the interpreter said something to Morales in Spanish, the trooper could not verify what the interpreter said to Morales. Morales acknowledged that the State could have called the interpreter to testify or the State could have presented the form that Morales signed acknowledging the warning, but the State failed to make either showing.

¶64 Like the majority, I agree that the State had to prove that it provided Morales with the special evidentiary warning. But I disagree that the State carried its burden to prove that it gave Morales the special evidentiary warning.

¶65 The State argues, and the majority agrees, that it proved that the trooper informed Morales of his right to additional testing because the trooper testified that the interpreter translated the warnings and read them to Morales. This is insufficient.

¶66 Where police use an interpreter to question a suspect, the questioning officer's testimony of what the inter-

preter said is admissible only if not offered for the truth of the matter asserted or the interpreter is the suspect's agent. *State v. Gonzalez-Hernandez*, 122 Wn. App. 53, 57, 92 P.3d 789 (2004) (citing *State v. Garcia-Trujillo*, 89 Wn. App. 203, 948 P.2d 390 (1997)).

¶67 In *Gonzalez-Hernandez*, the investigating officer used a fellow police officer to help translate an interview with Gonzalez. *Gonzalez-Hernandez*, 122 Wn. App. at 56. During the interview, Gonzalez stated that he was sorry, but the interpreter did not know how to translate important words like "rape" and "sorry." *Gonzalez-Hernandez*, 122 Wn. App. at 56. The interpreter also did not know why Gonzalez stated he was sorry. *Gonzalez-Hernandez*, 122 Wn. App. at 56. On rebuttal, the trial court admitted the investigating officer's testimony that Gonzalez had stated he was sorry but that Gonzalez did not know why he was sorry. *Gonzalez-Hernandez*, 122 Wn. App. at 56-57. We reversed, holding that the translation was unreliable because the State "did not establish what question [the interpreter] asked Gonzalez in Spanish that elicited the answer." *Gonzalez-Hernandez*, 122 Wn. App. at 59.

¶68 In *Garcia-Trujillo*, the trial court excluded an officer's testimony about what the defendant allegedly stated through an interpreter as inadmissible hearsay. *Garcia-Trujillo*, 89 Wn. App. at 205-06. On appeal, Division One of this court affirmed, holding that the trial court properly excluded the testimony because the interpreter was not the defendant's agent or authorized to speak for him. *Garcia-Trujillo*, 89 Wn. App. at 208-09. The court held that the error was not harmless because the officer had no way of knowing whether the defendant answered the question the interpreter was supposed to ask. *Garcia-Trujillo*, 89 Wn. App. at 209-10, 211-12.

¶69 Here, while testimony showed that Morales had some understanding of English, he required the use of an interpreter during both Trooper Brunstad's interview and the trial. The trooper acknowledged that he did not read the special evidence warning to Morales in English and that he

could not verify what the interpreter read to Morales. The record does not reveal that the interpreter told the trooper what he read to Morales. The State did not identify the interpreter or call him to testify. In fact, the trial court excluded Morales's answers to the DUI questionnaire because Trooper Brunstad did not know whether the interpreter actually advised Morales of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1996). The State did not include in the record on appeal the document that Morales allegedly signed stating that he understood the special evidence warning or any sworn statement by the trooper. The State offered the trooper's testimony to prove the truth of the matter asserted—that an interpreter read Morales the special evidence warning. The State did not show that the unidentified interpreter was Morales's agent. Trooper Brunstad's testimony was inadmissible hearsay to which Morales objected. The State failed to prove, as required by *State v. Turpin*, 94 Wn.2d 820, 826-27, 620 P.2d 990 (1980), that Trooper Brunstad read Morales the required special evidence warning.

¶70 I also disagree with the majority's holding that the failure to give a special evidentiary warning is subject to harmless error analysis. Under *Turpin*, the appropriate remedy is exclusion of the blood alcohol test results. *State v. Anderson*, 80 Wn. App. 384, 388, 909 P.2d 945 (1996). The *Turpin* court reversed Turpin's conviction and remanded the case for a new trial in which the blood alcohol test would be excluded. *Turpin*, 94 Wn.2d at 827. The *Anderson* court also remanded for further proceedings. *Anderson*, 80 Wn. App. at 384; *see also State v. Holcomb*, 31 Wn. App. 398, 401, 642 P.2d 407 (1982) (holding that failure to advise defendant of his right to have additional tests performed requires reversal).

¶71 Accordingly, I would hold that the trial court abused its discretion by admitting the blood alcohol test results and reverse Morales's vehicular assault conviction on the first two prongs, operating a vehicle in a reckless manner and

DUI. But, Morales did not assign error to his conviction on the third vehicular assault prong, operating a vehicle with disregard for the safety of others. I would affirm Morales's conviction for vehicular assault, but on the disregard for the safety of others prong only. And I would remand for resentencing on the vehicular assault count only because conviction under this prong requires a different sentence. *Brown*, 145 Wn. App. at 78-79.

## II. DRIVING UNDER THE INFLUENCE

¶72 I agree with the majority's holding that sufficient evidence supports Morales's conviction for DUI but would hold that admission of his blood alcohol results is not harmless error. I would therefore reverse and remand this count.

¶73 When reviewing the record below on a sufficiency of the evidence claim, the proper test is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990). We consider circumstantial evidence as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We leave credibility determinations for the trier of fact and do not review them. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶74 We review erroneous evidentiary rulings under the nonconstitutional harmless error standard. *State v. Ray*, 116 Wn.2d 531, 546, 806 P.2d 1220 (1991). An erroneous ruling amounts to reversible error if the court determines that within reasonable probabilities, the error materially affected the trial outcome. *State v. Calegar*, 133 Wn.2d 718, 727, 947 P.2d 235 (1997).

¶75 The to-convict jury instruction for driving under the influence required the jury to determine whether (1) on November 3, 2004, Morales drove a motor vehicle; (2) Morales was under the influence of or affected by intoxicat-

ing liquor while driving; and (3) the act occurred in Washington. Morales challenges only the second prong.

¶76 Jury instruction 17 provided:

A person is under the influence of or affected by the use of intoxicating liquor if the person's ability to drive a motor vehicle is lessened in any appreciable degree.

It is not unlawful for a person to consume intoxicating liquor and drive a motor vehicle. The law recognizes that a person may have consumed intoxicating liquor and yet not be under the influence of it.

Clerk's Papers at 43. As stated above, the trial court abused its discretion in admitting the results of Morales's involuntary blood alcohol test. Here, the State took Morales's blood sample several hours after the accident, which revealed a 0.12 blood alcohol level. RCW 46.61.502 provides:

(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:

. . . .

(b) While the person is under the influence of or affected by intoxicating liquor or any drug;

. . . .

(4) Analyses of blood or breath samples obtained more than two hours after the alleged driving may be used as evidence that within two hours of the alleged driving, a person had an alcohol concentration of 0.08 or more in violation of subsection (1)(a) of this section, and in any case in which the analysis shows an alcohol concentration above 0.00 may be used as evidence that a person was under the influence of or affected by intoxicating liquor or any drug in violation of subsection (1)(b) or (c) of this section.

¶77 For the purposes of the DUI conviction two beer cans were visible on the front passenger seat in Morales's vehicle. The search of Morales's vehicle revealed several more beer cans, some empty. The interior of the car smelled of intoxicants. As further evidence that Morales was affected by alcohol, he failed to stop at the stop

sign, which resulted in the collision from which he then fled. While the evidence tends to support a finding that Morales was under the influence or affected by intoxicating liquor, this evidence is not so overwhelming as to overcome the erroneous admission of Morales's blood alcohol test of 0.12. Morales's blood alcohol level was per se evidence that Morales drove under the influence of alcohol. RCW 46.61-.502(4). I cannot say that admission of this evidence did not affect the trial's outcome. I would remand for retrial of Morales's DUI conviction. *See State v. Wright*, 165 Wn.2d 783, 789, 203 P.3d 1027 (2009) (retrial permitted where conviction vacated for reason other than insufficient evidence).

Review granted at 169 Wn.2d 1001 (2010).