[No. 3202–7–III.   Division Three.   February 19, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. TRACY
MICHAEL CLINTON, *Appellant.*

*Robert E. Anderson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Gregory G. Staeheli* and *Al Gauper, Deputies,* for respondent.

MUNSON, J.—Tracy Michael Clinton appeals from a Spokane County conviction of second–degree assault.

The principal issue is whether the court erred in giving the following "transferred intent"[1] instruction:

INSTRUCTION No. 8
I instruct you that if you find that the defendant, with intent to assault a particular individual, struck at that individual with a pipe, and by mistake, accident or inadvertence the striking also took effect upon a second individual, in the eyes of the law the intent to assault was transferred to the second individual as well; and the defendant is just as guilty as if he had originally intended to assault the second individual also.

The facts establish the classic "transferred intent" case. There was evidence from which the jury could have found that Mr. Clinton, seated in his vehicle in a downtown Spokane parking lot, accosted Mr. and Mrs. Donald Miller, two pedestrian passers–by. Taunting Mr. Miller to fight with him, Mr. Clinton directed some obscene remarks to the couple, but they withdrew, suggesting Mr. Clinton was "crazy." He then jumped out of the car and armed himself with a rivet–studded pipe about 3 feet long. As the Millers retreated, Mr. Clinton began swinging the pipe so violently

---

[1]The "transferred intent" doctrine is a tort concept which has been criticized as having no place in the criminal law because of its misapplication in some cases. R. Perkins, *Criminal Law,* ch. 7, § 8, at 822 (2d ed. 1969). However, as the author notes at page 824:

> In general it may be said that if one intends injury to the person of another under circumstances in which such a mental pattern constitutes mens rea, and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate.

(Footnote omitted.)

his feet left the ground. Suddenly, the pipe left his hand, sailed past Mr. Miller and struck Mrs. Miller in the head, knocking her to the ground and causing severe injuries to her skull. Mr. Miller testified on cross–examination that he did not know at whom Mr. Clinton threw the pipe, but other witnesses said they believed Mr. Miller was the intended target.

Mr. Clinton and other defense witnesses testified that Mr. Miller started the verbal altercation and struck Mr. Clinton. Mr. Clinton said when some of Mr. Miller's friends came to Mr. Miller's aid: "I pulled the pipe out of the back seat of the car. . . . I swung it. Right when it got about half way it just slid out of my hand and hit his wife."

Mr. Clinton was charged with second–degree assault under RCW 9A.36.020 which provides:

(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

. . .

(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm;

. . .

He contends that since he was charged with *knowingly* assaulting another person, the court's "transferred intent" instruction was misleading and inconsistent with other instructions[2] which required a knowing assault. The thrust of his argument is that the questioned instruction allowed the jury to convict him without finding that he acted

---

[2]Instruction No. 3 provided:

"A person commits the crime of assault in the second degree when he knowingly assaults another with a weapon or other instrument or thing likely to produce bodily harm."

Instruction No. 5 provided:

"'Knowingly' means with knowledge; consciously; intelligently; willfully; with knowledge of the essential facts."

Instruction No. 6 provided:

"'Knowingly' means with awareness, deliberateness or intention."

Instruction No. 7 provided:

"To act knowingly is not to act negligently. Knowingly is an intentional act as opposed to a careless act."

knowingly. Mr. Clinton suggests that his conduct might have fallen within the proscription of RCW 9A.36.030(b) which punishes one who, with criminal negligence, causes physical injury to another by means of a weapon or other instrument or thing likely to produce bodily harm, but, under the facts of this case, he contends he could not be convicted of the knowing assault.

■ An instruction such as the one questioned here was approved in *State v. McGonigle,* 14 Wash. 594, 45 P. 20 (1896), where the court acknowledged the overwhelming weight of authority at common law approved the theory of transferring the intent of the defendant to harm one individual to another, but unintended, victim.[3] *Cf. State v. Cogswell,* 54 Wn.2d 240, 244, 339 P.2d 465 (1959).

Even absent case authority, the 1976 Criminal Code supports the court's instruction and the conviction in this case. First, RCW 9A.08.010(2) provides in part, "When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally." And, RCW 9A.08.010(1)(a) provides: "A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime." There was substantial evidence to establish that Mr. Clinton, in swinging at the victim's husband, did so with the objective or purpose of severely injuring his intended victim. Therefore, as the court instructed, Mr. Clinton could be convicted if, with the intent to assault the victim's husband, he mistakenly, accidentally, or inadvertently struck the victim instead. There was no error in the instruction.

We note that during oral argument Mr. Clinton's counsel also contended that because his client was charged with "knowingly" assaulting Mrs. Miller, he was not sufficiently advised of the nature of the charge and his defense was

---

[3]*See* C. Torcia, *Wharton's Criminal Law,* § 144 (14th ed. 1979); Annot., *Homicide by unlawful act aimed at another,* 18 A.L.R. 917, 920 (1922). *See also People v. Carlson,* 37 Cal. App. 3d 349, 112 Cal. Rptr. 321, 325 (1974); *People v. Tafoya,* 179 Colo. 438, 501 P.2d 118, 119 (1972).

necessarily prejudiced. In view of the common–law acceptance of transferred intent and the criminal code definitions, we find no merit in that claim. Counsel was sufficiently and adequately prepared to defend the charge.

Mr. Clinton next contends the court erred in failing to give his "missing witness" instruction which read:

If the State does not produce the testimony of a witness who is available to the State, and as a matter of reasonable probability it appears naturally in the interest of the Plaintiff to produce the witness. And if the State fails to satisfactorily explain why it has not called a witness, you may infer that the testimony which the witness would have given would have been unfavorable to the State. If you believe such inference is warranted under all the circumstances of the case. [*sic*]

Three persons on the prosecution's witness list were not called to testify: (1) an investigating officer who was on reserve military duty in Oklahoma; (2) an eyewitness whom the police could not locate because he had moved from his previous address; and (3) an eyewitness not located until the morning of the trial when he appeared and was told to return after the noon recess, but did not do so.

A "missing witness" instruction is proper where the witness is peculiarly available to one party and it can be reasonably inferred that because of his relationship to that party he would have been called as a witness but for the fact his testimony would have been damaging. *State v. Davis,* 73 Wn.2d 271, 277, 438 P.2d 185 (1968). There is nothing in the record to establish the witnesses' peculiar availability to the State nor a relationship upon which the adverse testimonial inference could be based. Nor did Mr. Clinton advise the trial court, as he contends here, that the witnesses would have been favorable to him. Finally, the absence of the witnesses was adequately explained. *See State v. Richards,* 3 Wn. App. 382, 386, 475 P.2d 313 (1970). The court did not err in failing to give the missing witness instruction.

Judgment of the Superior Court is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied March 12, 1980.

Review denied by Supreme Court May 9, 1980.