[No. 9832-2-I. Division One. July 13, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANCISCO
RAMIREZ LOPEZ, *Appellant.*

*James J. Lamont,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *David Lord, Deputy,* for respondent.

RINGOLD, A.C.J.—Francisco Ramirez Lopez appeals a judgment and sentence entered on his conviction by jury of first degree robbery while armed with a deadly weapon. We affirm the judgment and sentence.

On August 28, 1980, Fernando Lara and Anthony Ruiz were sitting on a bench in Seattle's Pioneer Square when they were approached by several men, including Francisco Lopez. Lopez yelled at Lara, hit him with his fists and an umbrella, took Lara's wallet, food stamps and wristwatch, and held a knife to his stomach. Lopez returned the wallet and fled the scene.

John Gibson witnessed this entire incident and he left to summon the police. Minutes later he returned with Officer Hubbard. The officer observed that the victim appeared to be in a state of shock with redness and swelling on his face and neck. Lara did not speak English. Over a defense hearsay objection, the officer testified to Lara's description of the offense as translated to the officer by Ruiz.

Lara stated that he had been sitting on the bench talking with Ruiz when two Mexican males and one Black male approached them. He stated that his watch and food stamps were stolen after he was beaten with an umbrella and threatened with a knife. He also described his assailant as a Mexican male, 5 feet 7 inches, wearing a brown coat, blue print shirt, blue pants and a brown felt cap. This description was broadcast on the police radio, and about 5 or 10 minutes later, Officer Kilmer detained the suspects. Lara, through the interpreter, identified the detained sus-

pects as the individuals who had attacked and robbed him. He also nodded toward them in an affirmative manner and pointed his finger. Lopez was dressed as previously described by Lara. The suspects were arrested and searched. A knife and a watch were found on Lopez, and Lara identified the watch as the one taken from him. He also identified the knife as the weapon used at the time of the incident. Food stamps were obtained from one of the other suspects, and an umbrella was also discovered at the scene. Lara identified the food stamps as being those taken from him.

Lara and Ruiz were not available to testify at trial. Officers Hubbard and Kilmer and witness Gibson testified in support of the prosecution's case. Gibson testified that he identified Lopez to the officers as the assailant he had previously observed, and recognized the watch as the one taken from Lara because he had noticed the watch prior to the robbery. Gibson also testified in detail concerning his observation of the robbery.

In his defense Lopez, testifying through an interpreter, stated that he had met Lara about 2 weeks before the incident, in Phoenix, and that Lara stole several items of property from him in Phoenix. He claimed that he confronted Lara about the theft when they met in Pioneer Square and that Lara pulled the knife, which Lopez grabbed out of his hand. He testified that Lara agreed to settle the dispute by giving him food stamps and the watch and promising to give him $10 the next time they met.

About 1 hour after the arrest, Detective Eblin interviewed Lara and Ruiz, explaining to them the requirement that they remain available to testify at trial. He gave each of them a business card and told them to inform him of any change in their address. They indicated they were going to move to Eastern Washington to pick apples and indicated they would return to Seattle after the harvest. Eblin spoke with them a couple of days later when they telephoned and said they were still in town, but would be leaving after a few more days. He reminded them at that time to keep in

contact. There was no further contact with Lara or Ruiz. On October 16, 1980, unsuccessful efforts were made to serve Lara and Ruiz with subpoenas at their last known Seattle address.

At trial, held October 30–31, 1980, Lopez requested a missing witness instruction. Defense counsel represented that as soon as he became involved in the case, he attempted to contact Lara and Ruiz and discovered they had already left. The court refused to give the instruction, concluding that the State could not be held responsible where the witnesses were known transients whose whereabouts could not have been discovered.

## MULTIPLE HEARSAY

Lopez contends that Lara's statement and Ruiz' translation were inadmissible hearsay. Because of the language barrier, Lopez argues we cannot determine whether Lara spoke spontaneously. He also contends that the translation was not an excited utterance because of the deliberation necessary to translate the statements.

Lara's statements satisfied the requirements for the admission of an excited utterance under ER 803(a)(2) and *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939). The problem here is with the admission of hearsay reports of the translator's description of the spontaneous statement by Lara. The general rule is that a witness is incompetent to testify to extrajudicial statements made by another person when it is necessary to have the statement translated before it can be understood by the witness. Such testimony is clearly hearsay because the witness testifies to what the interpreter asserts the other party said. *State v. Letterman*, 47 Or. App. 1145, 616 P.2d 505 (1980); *State v. Fong Loon*, 29 Idaho 248, 158 P. 233 (1916); *People v. Petruzo*, 13 Cal. App. 569, 110 P. 324 (1910); *State v. Terline*, 23 R.I. 530, 51 A. 204 (1902); Annot., 116 A.L.R. 800 (1938); 29 Am. Jur. 2d *Evidence* § 501 (1967). While Ruiz is competent to testify to Lara's spontaneous utterances, other witnesses are incompetent to testify to Ruiz' transla-

tion. Unlike Lara's statement, the translation cannot be found trustworthy under the excited utterance rule because it is a premeditated statement purporting to relate another's excited utterance. Without evidence of trustworthiness, hearsay testimony purporting to describe the translation is not admissible.

■ We conclude, however, that error in the admission of the hearsay testimony was harmless. The statements were fully corroborated by the competent eyewitness testimony of Gibson, who described the offender to the officer. Gibson also identified Lopez when he was discovered shortly after the crime. Gibson was present in court, testified to all the details of the offense and was available for cross-examination. On this record, we conclude that the defendant's guilt was conclusively proven by competent evidence and no other rational conclusion could be reached except that Lopez was guilty as charged. *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968).

### CIRCUMSTANTIAL EVIDENCE INSTRUCTION

■ Lopez next contends that the court erred by giving the standard instruction defining circumstantial and direct evidence. The instruction correctly states the law by informing the jury that the law makes no distinction between the weight to be given to either form of evidence. Error cannot be predicated on an instruction that correctly states applicable law. *State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975).

### MISSING WITNESS INSTRUCTION

Lopez contends that the requested instruction should have been given because the missing witnesses were peculiarly available to the State; merely giving them a business card and telling them to keep in touch does not adequately explain their absence; their testimony would have been important because the defense was based on the prior acquaintance of the victim and the defendant. Their testimony would have been damaging to the State because of its tendency to sustain the defense claim that the incident

involved a repayment of a debt, not a robbery. *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Clinton*, 25 Wn. App. 400, 606 P.2d 1240 (1980).

 The trial court must give a missing witness instruction where the witness is peculiarly available to one party and it can be reasonably inferred that because of the witness' relationship to that party he would have been called but for the fact that his testimony was damaging. *State v. Clinton, supra.* The instruction should not be given if the absence of the witness is adequately explained. *State v. Clinton, supra.* Here the State made immediate contact with the witnesses on the day of the offense; the State could not subpoena the witnesses at that time because there was no trial date; the State did all that it could, short of deposing them or detaining them as material witnesses. Lara and Ruiz were informed that as witnesses they had a duty to stay in contact with the prosecutor. When the witnesses called a few days later, the State was careful to reemphasize this duty. In light of the witnesses' apparent willingness to stay in touch, the State acted reasonably in not taking steps to perpetuate their testimony. Subsequently, a trial date was set and the State made reasonable efforts to subpoena the witnesses. The State adequately explained their absence. The trial court properly refused the instruction. *State v. Clinton, supra.*

Affirmed.

WILLIAMS and ANDERSEN, JJ., concur.