[No. 39454-1-I.    Division One.    December 18, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. MANUEL GARCIA-TRUJILLO, *Appellant*.

[19]RCW 9A.28.030.

204

*Kelly V. Curtin* of *Nielsen, Broman & Associates, P.L.L.C.*; and *Rosemary H. Kaholokula*, for appellant.

*David R. Needy, Prosecuting Attorney*, and *Kelly M. Willig, Deputy*, for respondent.

AGID, J. — A witness may not testify to the content of another's extrajudicial statement if the testimony is based on a translation rather than the witness's understanding of

the declarant's words unless the testimony is not offered for the truth of the matter asserted or the interpreter is an agent of the declarant. Manuel Garcia-Trujillo (Garcia) contends the trial court improperly admitted rebuttal testimony by the investigating detective about a statement Garcia made through an interpreter. The State cross-appeals, arguing that the trial court improperly excluded other testimony by the same detective based on its finding that the interpreter, a border patrol agent, was not Garcia's agent. Because the interpreter was not Garcia's agent, the trial court properly excluded the detective's testimony that is the subject of the State's cross-appeal. The court erred, however, when it permitted the detective to testify to some of Garcia's statements on rebuttal. That error was not harmless; we therefore reverse and remand for a new trial.

## FACTS

Garcia was charged with second degree rape of a child based on his relationship with 13-year-old V.C., with whom he engaged in consensual sex. On May 2, 1996, Garcia, who knew police wanted to speak with him, went to the police station with V.C. and her mother, E.C., to meet with Detective Thomas Moser. Detective Moser learned that Garcia, who was not a legal immigrant, could not communicate in English. He asked an interpreter in the building to inform Garcia of his arrest and then arranged for Special Agent Lee Bejar, a border patrol agent in Bellingham whose first language was Spanish, to translate the interview. At the CrR 3.5 hearing on July 12, 1996, Agent Bejar testified that he could not remember anything that happened on May 2 except that he had interpreted for Detective Moser. Four days later at trial, Bejar testified that while he remembered the content of what he interpreted, he did not remember what questions Moser asked or what Garcia answered. He did not testify to any of Garcia's statements at that time.

The State next called Detective Moser. The trial court

excluded Detective Moser's testimony about what Agent Bejar told him Garcia had said on the ground that it was inadmissible hearsay under *State v. Lopez*, 29 Wn. App. 836, 631 P.2d 420 (1981), and *State v. Huynh*, 49 Wn. App. 192, 742 P.2d 160 (1987), *review denied*, 109 Wn.2d 1024 (1988). On July 17, 1996, the State sought emergency review. A commissioner of this court denied the State's motion the next day.[1]

The following day, the State recalled Agent Bejar. Bejar testified that he now remembered some of the questions and answers he had translated when he acted as an interpreter for Detective Moser. Specifically, he remembered translating the question, "Do you know how old [V.C.] is?" and Garcia's answer, "No." He also remembered translating the question "How old do you think she is?" but remembered only that Garcia's response was an age under 18. The State then recalled Detective Moser, who testified that he had asked five or six questions regarding V.C.'s age, including "how old he thought [V.C.] was" and "how old did he think that she was."

Garcia testified on his own behalf and, when asked if he told police that V.C. did not tell him how old she was, denied that he had made that statement to Agent Bejar. Instead, he testified he told Agent Bejar that V.C. told him she was 17 years old. V.C. also testified she told Garcia she was 17 years old. The State called Detective Moser as a rebuttal witness. Moser testified that he asked Garcia if V.C. had

---

[1]Court of Appeals No. 38955-6-I (Wash. Ct. App. July 17, 1996). The commissioner noted that Washington has not adopted the language conduit theory adopted by some other jurisdictions. Rather, under Washington law, the pertinent question in determining whether a translated statement is hearsay is whether the interpreter is an agent of the declarant or authorized by the declarant to speak on his behalf. *Huynh*, 49 Wn. App. at 203. The trial court found that Agent Bejar was not Garcia's agent and that Garcia had not authorized him to speak for him. We denied the State's motion for reconsideration of the commissioner's ruling as moot after Garcia was convicted on July 19, 1996.

told him how old she was and that Garcia answered "No." The jury found Garcia guilty as charged.

## DISCUSSION

### Admissibility of Translated Statements

As noted above, this court previously considered the circumstances in which a statement translated by an interpreter is admissible under Washington law in *State v. Huynh* and *State v. Lopez*. At issue in *Huynh* was whether statements made by the defendant to a police officer through an interpreter were properly admitted at trial through the officer's testimony. The defense objected to the testimony as hearsay. We held that where the testimony " 'is based upon the translation alone rather than an understanding of the declarant's own words,' " it "is admissible only if it is not offered for the truth of the matters asserted or the interpreter is an agent or authorized to speak for the declarant."[2] We relied on the reasoning in *State v. Lopez*, where we held that an officer's testimony about the victim's description of the assailant was inadmissible hearsay:

> [A] witness is incompetent to testify to extrajudicial statements made by another person when it is necessary to have the statement translated before it can be understood by the witness. Such testimony is clearly hearsay because the witness testifies to what the interpreter asserts the other party said.[3]

Because the interpreter in *Huynh*, the victim's niece, was not an agent of the defendant and the translation was offered for the truth of the matters asserted, we held that the officer's proffered testimony was hearsay and not

---

[2]*Huynh*, 49 Wn. App. at 203 (quoting George V. Matlock, Note, Criminal Law/ Evidence—*Admissibility of Third-Party Testimony on Out-of-Court Statements Made to a Witness Through an Interpreter*—Chao v. State, *478 So. 2d 30 (Fla. 1985)*, 14 Fla. St. U. L. Rev. 371, 372 (1986); 29 Am. Jur. 2d *Evidence* § 501, at 558 (1967)).

[3]*Huynh*, 49 Wn. App. at 203 (quoting *Lopez*, 29 Wn. App. at 839).

admissible under ER 801 or any exception to the hearsay rule.[4]

Some of the federal circuits have adopted the language conduit theory, holding that if an interpreter is " 'no more than a language conduit,' " the translation " '[does] not create an additional level of hearsay.' "[5] In *United States v. Nazemian*, the Ninth Circuit adopted a narrower approach to be applied on a case-by-case basis, holding that an interpreter may be treated as a language conduit only if he or she is an agent of the declarant or there is some other basis for finding that the translated statements can fairly be considered the statements of the declarant.[6] *Nazemian* is thus generally consistent with the approach under Washington law established in *Lopez* and *Huynh*.

In this case, there is no basis for finding that Agent Bejar was an agent of Garcia or that he was authorized by Garcia to speak for him. Agent Bejar was present as an interpreter not because Garcia asked for his assistance but because Detective Moser brought him in to translate the questions he wanted to ask Garcia.[7] That the government supplies an interpreter is not necessarily dispositive in every case.[8] But here the interpreter was himself an agent of the United States Border Patrol and in a position adver-

---

[4]*Huynh*, 49 Wn. App. at 203.

[5]*United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) (quoting *United States v. Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989)).

[6]*United States v. Nazemian*, 948 F.2d 522, 526-27 (9th Cir. 1991), *cert. denied*, 506 U.S. 835 (1992). Under *Nazemian*, the factors to be considered in determining whether an interpreter is the declarant's agent include: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken after the conversation were consistent with the statements translated. The parties assert that this court directed the trial court to consider the factors in *Nazemian*, but this court's prior ruling actually only noted that it concerned a similar situation. While it was certainly proper for the trial court to consider these factors in determining that Agent Bejar was not Garcia's agent, those factors have not been expressly adopted into Washington law.

[7]*See Chao v. State*, 478 So. 2d 30, 32 (Fla. 1985) (where the declarant had brought the interpreter with him to assist him in turning himself in, it was clear the declarant authorized the interpreter to speak for him).

[8]*See Nazemian*, 948 F.2d at 528.

sarial to that of Garcia who was an illegal immigrant. Even if Garcia had not been an illegal immigrant, his immigration status would be affected by the outcome of this case.[9] The issue is not whether Agent Bejar had a motive to lie or to deliberately mistranslate. The issue is whether, under the circumstances, the facts support a finding that the interpreter was Garcia's agent or authorized by him to speak on his behalf. Given Bejar's role as a border patrol officer and Garcia's status as an illegal immigrant, there is simply no basis for finding that either was the case. The trial court did not abuse its discretion in excluding Detective Moser's testimony on direct examination about what Agent Bejar told him Garcia said during the interview.[10]

We turn now to the question whether the trial court abused its discretion when it admitted Detective Moser's rebuttal testimony about what Garcia told Agent Bejar when he was asked whether V.C. told him how old she was. Under ER 801, a prior out-of-court statement is not hearsay and is admissible for impeachment purposes if it is offered only to show that the statement was made and not to prove the truth of the matter asserted. The State argues that because Detective Moser's rebuttal testimony was offered to impeach Garcia's testimony, it was admissible under ER 801 on this basis. We agree that *Agent Bejar's* testimony that Garcia made such a statement to him during the interview would not have constituted hearsay under ER 801. But Detective Moser could testify only to what Bejar told him Garcia had said. He could not testify to what Garcia said based on his own understanding because he had no independent understanding of Garcia's words. He didn't even know whether the question was translated precisely as he had asked it. A number of questions were asked about Garcia's perceptions over time about a single fact, i.e., V.C.'s age. Even a small change in how a question was interpreted

---

[9]*See, e.g.*, 8 U.S.C. § 1182 (aliens excludable based on criminal convictions).

[10]*See Huynh*, 49 Wn. App. at 202 n.5 (evidentiary rulings are reviewed for abuse of discretion, i.e., whether the court exercised its discretion on untenable grounds or for untenable reasons).

could have significantly altered the way the listener understood the question. Agent Bejar admitted, for example, that to him the question "Did you know how old [V.C.] was?" was the same as "Do you know how old [V.C.] is?" He said he would probably have translated them the same way, even though one was intended to elicit what Garcia knew at the time he had sex with V.C. and the other was intended to elicit what he knew at the time of the interview. Bejar agreed that this is because translation is a form of paraphrasing and it is not possible to translate literally from one language to another. The difference in the two questions is significant: his answer to the second is irrelevant to Garcia's guilt or innocence while the wrong answer to the first admits an element of the crime. Because Agent Bejar was neither Garcia's agent nor authorized to speak on his behalf, his words cannot be considered those of Garcia himself. Moser's testimony about what Bejar told him Garcia said was thus hearsay, regardless of the purpose for which it was admitted.

### Admissibility of E.C.'s Testimony

Garcia also contends that the trial court abused its discretion when it admitted testimony by V.C.'s sister, E.C., that she sometimes saw V.C. walk home from school with 14-year-old M., who lived in the same apartment building. The State offered this to counter Garcia's defense that he reasonably believed V.C. was 17. The State elicited this statement from E.C. along with a statement that V.C. and M. were classmates at the same middle school. It did so after the court had expressly instructed the State to limit E.C.'s testimony to statements about V.C. sometimes playing baseball or tag outside with children closer to her own age, including M. and two others who were 12 and 9, at times when Garcia was around. Defense counsel objected to E.C.'s testimony about the school on the ground that the State had not shown that Garcia knew it. The trial court sustained the objection and instructed the jury to disregard E.C.'s testimony that they were classmates at the same

school.[11] Garcia's presence when V.C. played with younger children was relevant to rebut his defense, i.e., that he reasonably believed V.C. was 17 years old.[12] Although E.C.'s testimony was not directly probative of what Garcia did or did not know, it did tend to suggest that he had reason to question V.C.'s statement that she was 17. The trial court did not abuse its discretion in permitting E.C. to testify to that point.

## Harmless Error

■ The question remains whether the trial court's error in admitting Detective Moser's hearsay rebuttal testimony was harmless.[13] It went directly to the only critical issue in this case, i.e., whether Garcia reasonably believed that V.C. was 17. Despite E.C.'s testimony that Garcia was sometimes around when V.C. played baseball or tag with younger children outside the building, the question of what Garcia knew or believed was a close one. V.C. herself testified that she told Garcia she was 17, that she dated a 21-year-old man before she began dating Garcia, that she and Garcia spoke of getting married, and that she had willingly accompanied Garcia to a friend's house at night where it was she who twice asked him to have sex. All these are actions more consistent with someone who is 17 than with someone who is 13. Garcia admitted that Moser asked, through Bejar, if V.C. had told him how old she was. But he testified that he told Bejar V.C. said she was 17. Detective Moser's was the only testimony that controverted Garcia's on this crucial point. But Moser's testimony was inherently unreliable because he had no way of knowing whether the translated question to which he believed Garcia answered "No" was in fact the same question he had asked. Because

[11]*See City of Bellevue v. Kravik*, 69 Wn. App. 735, 743, 850 P.2d 559 (1993) (jury presumed to follow instructions given).

[12]ER 401 (relevant evidence is evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable).

[13]*State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990).

he did not speak Spanish, he could not have known either what Bejar asked or just what Garcia's answer was. Given how close the question of how old Garcia reasonably believed V.C. was, the outcome of the trial could well have been affected by Detective Moser's hearsay testimony.

Reversed and remanded for a new trial.

WEBSTER and BECKER, JJ., concur.

Reconsideration denied March 16, 1998.