**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON, )
                           )    DIVISION ONE
          Respondent, )
                           )    No. 70462-1-I
        v. )
                           )    UNPUBLISHED OPINION
ROBERT G. ISABEL, )
                           )
          Appellant. )    FILED: September 15, 2014
_____ )

DWYER, J. – Robert Isabel seeks a new trial on charges of drive-by shooting and unlawful possession of a firearm, arguing the trial court erred in denying his motion for a mistrial and refusing to give a missing witness instruction. We affirm.

I

In the early morning hours of January 3, 2012, Marion Tucker and his cousin Willie Watson called 911 to report a drive-by shooting. Seattle Police Officer Michael Connors responded to the call, interviewed Tucker, and located a bullet hole on the passenger side of Tucker's car. Detective Benjamin Hughey interviewed Tucker on January 6, after reviewing a report prepared by Officer Connors. According to Tucker, he was alone in his car driving to Watson's house when he heard a popping noise. Tucker identified the shooter as Robert Isabel, the current boyfriend of Tucker's former girl friend.

The State charged Isabel with drive-by shooting and first degree unlawful possession of a firearm. During pretrial proceedings, Isabel claimed the State had failed to meet its obligation to disclose exculpatory evidence. In particular, he argued that a January 3 radio transmission, in which Officer Connors reported to police dispatch that he heard "conflicting stories" from Tucker, demonstrated that Officer Connors would provide potentially exculpatory testimony. Isabel asked the court to order the prosecutor to locate Officer Connors, who was no longer employed by the Seattle Police Department. Noting that the State properly disclosed the transmission but had no "obligation to hunt down potential Defense witnesses," the trial court directed the prosecutor to contact the Seattle Police Department and request Connors' last known address.

At trial, near the end of the day on a Thursday, one defense attorney cross-examined Tucker while his co-counsel sat at counsel table. After confirming that Tucker continued to Watson's house after the shooting, the following exchange occurred:

Q. How far is Mr. Watson's house?
A. Well, I can't tell you that, actually tell you where he lives at. Mr. Isabel's family has been threatening my friends and my family and my kids. So I can't tell you that.
[Co-counsel]: Objection, Your Honor.
THE COURT: What's your objection?
[Co-counsel]: Nonresponsive.
THE COURT: Ask another question.
Q. Does Mr. Watson live in the general area of 23rd and Jefferson?
A. He lives in the Central District. Yes, he does.
Q. Does he live within one block of 23rd and Jefferson?
A. I don't want to put this guy in danger.
[Co-counsel]: Objection, Your Honor.
THE COURT: You don't have to give the address.
A. He lives – it's pretty much – I mean, you give the distance, I mean you can pretty much pinpoint where he lives.

[Defense counsel]: Your Honor, I don't believe that Mr. Watson is going to be in any danger.

[Co-counsel]: Objection, Your Honor. Can we have a sidebar, please? Can I have a moment, Your Honor?

(OFF THE RECORD DISCUSSION)

BY [Defense counsel]:

Q. Can you give us an approximate distance from the intersection of 23rd and Jefferson to Mr. Watson's house?

THE COURT: There's 360 degrees from that point. Are you trying to figure out how long it takes?

[Defense counsel]: Yes, Your Honor. I'm trying to figure out how long it takes, the distance.

THE COURT: From the point of the event, and if you were to drive to Mr. Watson's house, how long is it?

A. 60 seconds.

THE COURT: Go ahead.

A short time later, after the court excused the jury, the defense requested a mistrial based on Tucker's reference to threats from Isabel's family. When a dispute arose as to which attorney was questioning Tucker at the time he made the statement, the trial court advised the parties to obtain the relevant portion of the transcript by the next trial day.

On the following Monday, the defense again requested a mistrial, arguing that Tucker's unsolicited remark was so prejudicial as to deprive Isabel of a fair trial. After reviewing the relevant portions of the transcript, the trial court first noted the irregular procedure of one defense attorney questioning a witness while a second defense attorney interposed objections while seated at counsel table. Recognizing that Tucker's comment was nonresponsive, as identified by co-counsel as the basis for her objection, the trial court then reasoned:

> But there was no concurrent request to strike the answer or for me to perhaps tell the jury to disregard the statement, nothing. So at this point if someone had requested that, I could have corrected it at the time it occurred. But there wasn't any motion to do that.

3

Further, the statement is not attributed necessarily to Mr. Isabel. It's attributed to Mr. Isabel's family. And presumably Mr. Isabel doesn't have 100 percent control of his family members.

There was no motion in limine made to instruct the witness not to mention that, so there's been no motion in limine violated. I do not find it to be inherently prejudicial such that it requires a new trial.

And at this point, I don't think it would be in the Defendant's interest to admonish the jury about it and bring it up again. So at this point I'm denying the motion for a mistrial, and I think we just need to move on.

On the next trial day, outside the presence of the jury, defense counsel advised the court that the State had not provided a forwarding address for Officer Connors. The prosecutor reported that he requested Connors' address from the Seattle Police Department as directed by the trial court, but had received no reply. The trial court offered to sign an order for the defense investigator to take to the precinct.

Officer Connors did not appear at trial. The trial court denied Isabel's request for a missing witness instruction.

The jury found Isabel guilty as charged. The trial court imposed a standard range sentence.

Isabel appeals.

II

Isabel first contends that the trial court erred by denying his motion for a mistrial. Describing Tucker's reference to threats as serious, inflammatory, and prejudicial, Isabel claims that the trial court "preemptively" and "inexplicably refused" "to either offer to admonish the jury or give a curative instruction,"

4

thereby "rendering any objection or request . . . futile at best," and denying his right to a fair trial.

Because the trial judge is in the best position to determine the impact of a potentially prejudicial remark, we review the trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. State v. Escalona, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987).

> In determining whether a trial court abused its discretion in denying a motion for mistrial, this court will find abuse "only 'when no reasonable judge would have reached the same conclusion.'" "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." In determining the effect of an irregular occurrence during trial, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."

State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (footnotes omitted) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

Isabel fails to address the trial court's assessment of the first factor articulated in Johnson, that of the seriousness of Tucker's remarks. As the trial court observed, Tucker did not attribute any threats to Isabel personally and there was no allegation that Isabel was responsible for the actions of unnamed family members. Thus, this situation differs from that presented in Escalona, wherein we held that a mistrial should have been declared after a witness improperly testified that the defendant had committed a crime in the past similar to the one with which he was charged. Here, Tucker's comments did not invite the jury to improperly infer that Isabel had acted in conformity with a criminal character as demonstrated by past conduct or that he was seeking to intimidate

witnesses. Cf. Escalona, 49 Wn. App. at 256 (citing State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). Analysis of the first Johnson factor clearly supports the trial court's denial of Isabel's motion for a mistrial.

Furthermore, we disagree with Isabel's characterization of the trial court's analysis of the third Johnson factor. The trial court found that any potential prejudice resulting from Tucker's remarks could have been cured with an instruction had defense counsel requested one while Tucker was on the stand. Ignoring this finding, and without citation to relevant authority, Isabel claims that the trial court erred by denying him "the option" of seeking a curative instruction. But rather than refusing to consider a defense request for such an instruction following the motion hearing or entering a ruling as to Isabel's best interests, the judge herein merely offered her opinion as to the wisdom of revisiting the matter before the jury. To the extent that the defense attorneys disagreed with the judge's assessment of Isabel's best interests, it was their responsibility to request whatever curative instruction they thought necessary and obtain a ruling on the request. On this record, Isabel fails to demonstrate any abuse of discretion in the trial court's denial of his motion for a mistrial.

III

Isabel also argues that the trial court denied his right to present a defense by refusing to give a missing witness instruction regarding Officer Connors.

When its decision is based on a factual dispute, we review the trial court's refusal to issue a requested instruction for an abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

A missing witness instruction informs the jury that it may infer from a witness's absence at trial that his or her testimony would have been unfavorable to the party who would logically have called that witness. State v. Flora, 160 Wn. App. 549, 556, 249 P.3d 188 (2011). Such an instruction is proper where the witness is peculiarly available to one of the parties, Flora, 160 Wn. App. at 556, and the circumstances at trial establish that, as a matter of reasonable probability, the party would not have knowingly failed to call the witness "unless the witness's testimony would be damaging." State v. Davis, 73 Wn.2d 271, 280, 438 P.2d 185 (1968), overruled on other grounds by State v. Abdulle, 174 Wn.2d 411, 275 P.3d 1113 (2012). However, no inference is permitted where the witness is unimportant or the testimony would be cumulative. State v. Blair, 117 Wn.2d 479, 489, 816 P.2d 718 (1991). Nor is a party entitled to a missing witness instruction where the absence of the witness can be satisfactorily explained. Blair, 117 Wn.2d at 489 (citing State v. Lopez, 29 Wn. App. 836, 841, 631 P.2d 420 (1981)).

Here, the trial court did not abuse its discretion by refusing to give a missing witness instruction. Although Officer Connors formerly served as a member of the Seattle Police Department, nothing in the record indicates that he had a continuing "community of interest" with the police and the prosecutor at the time of Isabel's trial. Cf. Davis, 73 Wn.2d at 278. In fact, contrary to Isabel's speculation, nothing in the record indicates that the former officer was still appearing in court to testify in cases in which he had participated. Instead, the prosecutor repeatedly stated on the record that his office could not locate

7

Connors and that the Department had not answered the prosecutor's requests for information.

Moreover, Connors' testimony would have been cumulative. Detective Hughey testified that he noticed inconsistencies between Officer Connors' report of Tucker's initial statement and his own interview with Tucker. Detective Hughey also described Tucker's responses when confronted with the differing statements. Defense counsel also cross-examined Tucker about how his various statements to police and defense counsel conflicted with his testimony at trial. We reject Isabel's bald claim in his reply brief that Connors' testimony was critical to the defense case because of the "impeachment value of the jury hearing evidence presented by the witness who obtained it." As the trial court observed, Isabel failed to demonstrate that if Connors had appeared at trial, he "would testify to anything that would be helpful to the Defense."

Because the State explained Connors' absence and his testimony would have been cumulative, Isabel was not entitled to a missing witness instruction.

Affirmed.

We concur: