IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51774-4-II |
| Respondent, | |
| v. | |
| ERICK NATHAN CHAPMON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—Sasha Green, Jessica Newman, and Tonya Carroll attended a New Year's Eve party together where they got into an argument with another group of women and decided to leave. As Green was pulling out of her parking spot on the street, Erick Nathan Chapmon fired multiple shots at the car and one bullet hit Newman in the leg. Chapmon claimed he fired because he was afraid the car was going to hit partygoers standing nearby.

A jury found Chapmon guilty of three counts of second degree assault with a firearm enhancement on each count. Chapmon argues that the trial court erred when it gave a transferred intent instruction connected to the second degree assault charges because it relieved the State of the burden of proving every element and was an improper judicial comment on the evidence. Chapmon also argues that the trial court erred in sentencing Chapmon to three firearm enhancements because, even though the special verdict form used the term "firearm," the special verdict instruction referred to a "deadly weapon."

Finally, Chapmon argues we should strike the $200 filing fee from his judgment and sentence because he is indigent.

We affirm Chapmon's convictions and the firearm enhancements but remand for the trial court to strike the filing fee.

FACTS

Witnesses provided varying descriptions of events leading up to the shooting. Green, Newman, and Carroll went to a New Year's Eve party, and Green was the designated driver for the group. Shortly after midnight, Newman, who was very intoxicated, was in the bathroom crying. Green tried to comfort Newman and brought her outside to talk. While Green and Newman were outside, several women approached Green, including Sydney Stovall, Chapmon's wife. Someone had hit Stovall in the face with the bathroom door hard enough to cause bleeding. Stovall believed that Newman was responsible for her injury. Tension among the women escalated. Eventually, Carroll joined her friends outside, and Chapmon came out to check on his wife.

Green, Newman, and Carroll got into Green's car and started to leave. Shortly after the women got in, Chapmon fired at the car. One of the shots hit Newman in the leg. Green panicked and drove off. A few blocks away, Green stopped to call 911. The three women spoke with the police and Newman went to the hospital. A bone in her leg was broken.

The State charged Chapmon with three counts of first degree assault with a firearm enhancement for each count.

At trial, Green explained she felt threatened by the way Stovall was treating her and Newman. She testified that as she was trying to leave with her friends, someone tried to pull Carroll out of the car and people starting punching and kicking the car. When Green tried to drive forward

out of her parking space on the street, she was blocked by a car that was stopped in the middle of the street. Green panicked and was afraid of what people would do if she waited for the car to move. Green backed up to turn and go in a different direction. As Green was backing up, she saw Chapmon with a gun at his side. As Green was about to go forward, Newman rolled down her window and taunted Chapmon. Chapmon started shooting at Green's car. Green and Carroll were afraid they would be shot.

Chapmon also testified. He explained that his wife had been hit in the face and that she went outside to get some air with a friend. After a few minutes, Chapmon went outside to check on his wife. Chapmon saw the women arguing and Green getting in her car to leave. Chapmon testified that Green drove forward, not backwards, onto the curb. People started to back up quickly, and Chapmon drew his gun and yelled for Green to stop. Instead of stopping, Green drove forward, so Chapmon aimed at the bottom of the car and started firing because the car was close to running people over. Chapmon claimed he was not upset with anyone in the car and that he never heard Newman say anything to him.

The trial court instructed the jury on first degree assault and the lesser included offense of second degree assault. The to convict instruction for each charge of first degree assault required the jury to find that "the defendant assaulted [Sasha Green, Jessica Newman, or Tonya Carroll] . . . with a firearm, . . . [and] with intent to inflict great bodily harm." Clerk's Papers (CP) at 91, 93, 95. The to convict instruction for each charge of second degree assault against Green and Carroll required the jury to find that "the defendant assaulted [Sasha Green or Tonya Carroll] with a deadly weapon." CP at 94, 96. The to convict instruction for second degree assault against Newman added an alternative that the defendant "intentionally assaulted" Newman and "recklessly inflicted

substantial bodily harm," in addition to "assaulted Jessica Newman with a deadly weapon." CP at 92.

The State asked the trial court to give a transferred intent instruction, telling the jury that "if a person acts with intent to assault another person, but the act harms an unintended person, the actor is also deemed to have acted with intent to assault the unintended person." CP at 90. Harm under this instruction included causing "a harmful or offensive touching, striking or shooting of the unintended person, and/or . . . creat[ing] in the unintended person a reasonable apprehension and imminent fear of bodily injury." *Id.* The State relied on *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009) and WPIC 10.01.01[1] to support this instruction. Chapmon objected but the trial court concluded the instruction was appropriate in this case. The trial court instructed the jury on transferred intent for both first degree assault and for the lesser included second degree assault.

Finally, the trial court instructed the jury that it must determine whether "the State [proved] beyond a reasonable doubt that the defendant was armed with a *deadly weapon* at the time of the commission of the crime." CP at 106 (emphasis added). Chapmon did not object to this instruction. The instruction went on to explain that a "firearm is a deadly weapon." *Id.* The trial court also provided the jury with the definition of a "firearm." In contrast, the special verdict forms asked the jury to determine if Chapmon was "armed with a *firearm* at the time of the commission of the crime." CP at 108, 112, 115 (emphasis added).

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.01.01 (5th ed. 2021).

The jury found Chapmon not guilty of all three counts of first degree assault, but it found him guilty of three counts of second degree assault. The jury also found that Chapmon was armed with a firearm during the commission of the crimes. Chapmon appeals.

ANALYSIS

I. TRANSFERRED INTENT INSTRUCTION

The State must prove every element of the crime charged beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). If a jury instruction relieves the State of its burden to prove an element, then reversal is required. *Id.* We review jury instructions de novo. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

Chapmon argues that the trial court erred when it gave a transferred intent instruction because it relieved the State of its burden to prove the required element of intent. Chapmon also asserts that the transferred intent reasoning that is applicable for first degree assault does not apply to second degree assault. Finally, Chapmon argues the transferred intent instruction was an improper judicial comment on the evidence. We disagree and conclude that the trial court did not err.

A.      Second Degree Assault and Transferred Intent

Under RCW 9A.36.021(1)(a) and (c) a defendant is guilty of second degree assault if the defendant "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm" or "[a]ssaults another with a deadly weapon." The legislature has declined to provide a definition of "assault," so courts have used the common law definitions. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995). In Washington, there are three definitions of "assault:" (1) unlawful touching

(battery), (2) an "attempt with unlawful force to inflict bodily injury" (attempted battery), and (3) "putting another in apprehension of harm." *Elmi*, 166 Wn.2d at 215.

To convict a person of second degree assault, the State is required to prove the defendant had "specific intent either to create apprehension of bodily harm or to cause bodily harm." *Byrd*, 125 Wn.2d at 713. The State must prove the defendant intended to produce a specific result, not just that the defendant intended to perform an act that created the result. *Elmi*, 166 Wn.2d at 215.

Common law transferred intent has been a part of Washington law for over 100 years. *State v. McGonigle*, 14 Wash. 594, 601-02, 45 P. 20 (1896). Under the doctrine of transferred intent, once the State has established the defendant's intent to inflict harm on a first victim, that mens rea transfers to any unintended victim who was inadvertently harmed. *State v. Clinton*, 25 Wn. App. 400, 403, 606 P.2d 1240 (1980).

B.      Burden of Proof

Chapmon first notes that the Washington Supreme Court's transferred intent analysis in *Elmi*, 166 Wn.2d at 218, relied upon particular language in the first degree assault statute that is absent in the second degree assault statute. As a result, Chapmon contends, the trial court was incorrect to rely on *Elmi* to support a transferred intent instruction in a second degree assault case. We agree that *Elmi* is distinguishable because it involved first degree, not second degree, assault. *Id.* at 218-19.

Even so, courts have applied the common law doctrine of transferred intent in second degree assault cases involving physical harm. *State v. Aguilar*, 176 Wn. App. 264, 275-77, 308 P.3d 778 (2013); *State v. Wilson*, 113 Wn. App. 122, 128, 131, 52 P.3d 545 (2002). In *Clinton*, the defendant swung a pipe at one person, but it slipped out of his hand and severely injured another

person. 25 Wn. App. at 401-02. Clinton, like Chapmon, argued that the transferred intent instruction relieved the State from having to prove the specific intent necessary for a second degree assault conviction. *Id.* at 402-03. Division Three concluded that a transferred intent instruction was proper in these circumstances and affirmed the defendant's second degree assault conviction. *Id.* at 403, 405.

Chapmon has failed to show why transferred intent should not apply to second degree assault where a defendant's action put another in apprehension of harm. Chapmon asserts that naming the victim in a second degree assault instruction prevents the application of transferred intent, relying on *State v. Abuan*, 161 Wn. App. 135, 257 P.3d 1 (2011). But *Abuan* does not help Chapmon.

In *Abuan*, the defendant was convicted of two counts of second degree assault after the defendant fired a gun at another gang member who was in a garage attached to a house. *Id.* at 140-43. The victim for one of the counts was the person in the garage and the victim for the other count was his brother inside the house. *Id.* at 141-42, 145. We reversed the convictions on unrelated grounds. *Id.* at 141. We noted, however, that there was no room for a transferred intent analysis when the unintended victim, the brother in the house, was identified by name in the to convict instruction *and no transferred intent instruction was sought or provided*. *Id.* at 156. Moreover, in *Abuan*, the named unintended victim was in the house, not the garage, no bullets struck the house, and the unintended victim did not see the shooting. *Id.* at 159.

Here, the defendant admitted he shot at Green's car. The three victims were all inside the car, Newman was hit with a bullet, and Green and Carroll testified they were afraid they would be hurt by the gunfire. A transferred intent instruction *was* sought and provided. Thus, the jury could

infer both a specific intent to harm or cause apprehension of harm in at least one of the women in the car and that intent could legitimately transfer to the other victims in the car. *Abuan* does not require a different conclusion.

We conclude that Chapmon has failed to establish the trial court erred when it gave the jury a transferred intent instruction in a case involving second degree assault based on apprehension of harm.

C.     Comment on the Evidence

Chapmon also argues the instruction on transferred intent was an improper judicial comment on the evidence that established one of the elements of the crime for the jury. We conclude that the trial court did not comment on the evidence when it provided a transferred intent instruction.

Under article IV, section 16 of the Washington Constitution, a trial court is prohibited from "'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). A jury instruction that accurately states the law is not an impermissible comment on the evidence. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

Here, Chapmon fails to show that the transferred intent instruction was an improper judicial comment on the evidence. The instruction did not express the judge's opinion about the evidence, nor did the instruction establish a fact as a matter of law. As explained above, the instruction was permissible in a second degree assault case and it accurately stated the common law doctrine of transferred intent.

We conclude that the trial court did not comment on the evidence when it gave the transferred intent instruction.

## II. FIREARM ENHANCEMENT

Chapmon argues that the trial court erred when it sentenced Chapmon to firearm enhancements because the special verdict instruction told the jury it needed to find beyond a reasonable doubt that Chapmon was "'armed with a *deadly weapon*'" at the time of the crime, not armed with a *firearm.* Br. of Appellant at 17 (emphasis added).

We conclude that even if the trial court erred when it gave the jury a special verdict instruction that used "deadly weapon" instead of "firearm," this was not a manifest error warranting review for the first time on appeal and, even if it was, it would be a harmless error.

A.    Scope and Standard of Review

Generally, we do not consider a claimed error if the appellant failed to raise the error below. *State v. Chacon*, 192 Wn.2d 545, 547, 431 P.3d 477 (2018). However, an appellant may raise a manifest error that affects a constitutional right for the first time on appeal. RAP 2.5 (a)(3); *Chacon*, 192 Wn.2d at 547. For there to be a *manifest* constitutional error there must be "'a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Chacon*, 192 Wn.2d at 548 (alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). Not every type of error in a jury instruction is automatically a manifest constitutional error. *Id.* Once the appellant establishes a manifest constitutional error, then the court must consider whether the error was harmless. *O'Hara*, 167 Wn.2d at 99.

If an appellant challenges a jury instruction, we review the instruction de novo and consider the challenged instruction within the context of the other instructions. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). "'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)). An error in the jury instructions is harmless if, beyond a reasonable doubt, the jury's verdict would have been the same absent the error. *Brown*, 147 Wn.2d at 341.

B.      Manifest Error

Chapmon argues he can raise an error that inhibits his right to a jury trial for the first time on appeal. Reply Br. of Appellant at 6 (citing *State v. Hughes*, 154 Wn.2d 118, 143, 110 P.3d 192 (2005), *abrogated by Washington v. Recuenco*, 584 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). But *Hughes* does not support Chapmon's position. *Hughes* addressed whether a *Blakely*[2] error, where a judge has found a fact that should have been decided by a jury, is ever subject to a harmless error analysis. 154 Wn.2d at 142-43. The *Hughes* court did not hold that any error impacting the right to a jury trial can be raised automatically for the first time on appeal. Chapmon fails to show that his alleged error was a *manifest* error; instead, he merely relies on the fact he is alleging a constitutional error.

Even assuming Chapmon raises a constitutional error, he fails to show that the error "'had practical and identifiable consequences in the trial of the case.'" *Chacon*, 192 Wn.2d at 548 (internal quotation mark omitted) (quoting *O'Hara*, 167 Wn.2d at 99). The State properly charged

---

[2] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Chapmon with a firearm enhancement and provided the jury facts to support a firearm enhancement, a "firearm" definition was provided to the jury, the jury was told that a "firearm is a deadly weapon," and, significantly, the jury was provided with a special verdict form that asked the jury to determine whether Chapmon was armed with a firearm. CP at 83, 106. The only error was the wording in the special verdict instruction that used "deadly weapon" instead of "firearm." And Chapmon fails to show that the jury would have found that he was not armed with a firearm during the assaults if the special verdict instructions had used "firearm" instead of "deadly weapon." There was only one weapon, a firearm, and Chapmon admitted to shooting the firearm at the women. Therefore, the use of "deadly weapon" instead of "firearm" was not a *manifest* error affecting a constitutional right.

Furthermore, even if we were to consider Chapmon's claim, any error was harmless. In *State v. Vazquez*, 200 Wn. App. 220, 222, 402 P.3d 276 (2017), the defendant was charged with first degree assault and rioting while armed, and a firearm enhancement was charged on each count. The special verdict forms also properly asked whether Vazquez was armed with a "'firearm.'" *Id.* at 223. However, the special verdict instruction used "deadly weapon" instead of "firearm" and the jury was not given the definition of "firearm." *Id.* at 222-23. The jury found Vazquez was armed with a firearm during the commission of the crime. *Id.* at 223.

The court concluded that the use of "deadly weapon," rather than "firearm," was instructional error and, therefore, the court considered whether the error was harmless beyond a reasonable doubt. *Id.* at 225. While the error was significant, it did not require reversal because Vazquez admitted to firing the gun and there was video evidence satisfying any concern that the weapon met the definition of "firearm." *Id.* at 224-25.

Here, as in *Vazquez*, any error was harmless beyond a reasonable doubt. The State charged Chapmon with a firearm enhancement, Chapmon admitted firing his gun at the car, there was no other weapon involved, and the jury found that Chapmon was armed with a firearm when it used the special verdict form that correctly used "firearm" instead of "deadly weapon." Here, unlike in *Vazquez*, the trial court instructed the jury on the definition of a "firearm." Thus, even if there were error, it was harmless beyond a reasonable doubt. *Vazquez* also supports our determination that any error did not have any practical consequences and was therefore not manifest.

Chapmon relies on *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008), to argue that the imposition of a firearm enhancement is error that can never be harmless if the jury was given a "deadly weapon" instruction. Chapmon's interpretation of *Recuenco* is incorrect. The *Recuenco* court considered whether sentencing the defendant to a firearm enhancement was harmless where Recuenco was never charged with a firearm enhancement, the jury was never given the facts to support the firearm enhancement, and the jury returned a finding that Recuenco was armed with a deadly weapon, not a firearm. *Id.* at 431, 435-36, 439. The court concluded the error could not be harmless because the trial court exceeded its authority in imposing a firearm enhancement at sentencing. *Id.* at 441. Here, the jury found that Chapmon used a firearm, not just a deadly weapon.

Chapmon also relies on *In re Personal Restraint of Delgado*, 149 Wn. App. 223, 204 P.3d 936 (2009). In *Delgado*, the State charged the defendants with a *deadly weapon* sentencing enhancement. *Id.* at 229. Even though the special verdict forms used "firearm," a "firearm" definition was not given and the special verdict instruction used "deadly weapon" instead of "firearm." *Id.* The *Delgado* court concluded the mere use of "firearm" in the special verdict form, without a "firearm" definition, was insufficient to allow the trial court to impose firearm

enhancements. *Id.* at 236-37. A harmless error analysis could not be applied because the State failed to charge the defendants with firearm enhancements, so the error was not an error with the instructions. *Id.* at 237.

Here, unlike *Delgado*, Chapmon was charged with a firearm enhancement and the jury was provided with the definition of "firearm." The *Delgado* court noted that if the defendants had been properly charged, as Chapmon was, then a harmless error analysis would apply. *Id.* And where it is undisputed that a firearm was the weapon used, as was the case here, reference to "deadly weapon" in the instruction would have been harmless. *Id.*

We conclude that even if there were an error with the special verdict instruction, it was not manifest and it was harmless.

### III. LEGAL FINANCIAL OBLIGATION

Chapmon argues that we should strike the $200 filing fee the trial court imposed because he is indigent. The State concedes that we should remand to strike the $200 criminal filing fee.

In 2018, the legislature amended RCW 36.18.020(2)(h) to prohibit courts from imposing the criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17. Chapmon was sentenced before this amendment took effect, but the Supreme Court has held that this amendment applies prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 750, 426 P.3d 714 (2018). We accept the State's concession and remand to the trial court to strike the criminal filing fee.

No. 51774-4-II

CONCLUSION

We affirm Chapmon's convictions and the firearm enhancements, but we remand for the trial court to strike the filing fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J

We concur:

Sutton, J.

Veljacic, J.

14